# TAXPAYERS' ASSOCIATION OF HARRIS COUNTY ET AL. V. CITY OF HOUSTON ET AL.

No. 7240. Decided May 12, 1937.
Rehearing overruled June 23, 1937.
(105 S. W., 2d Series, 655.)

*H. Fletcher Brown* and *J. S. Bracewell,* both of Houston, for plaintiffs in error.

When a power is given to a city and the mode of its exercise is prescribed either by Constitution or charter, such method so prescribed is exclusive, and since the general law and charter give the mayor and city council the right to formulate a budget and make amendments thereto and the charter provides that the compensation of all officers shall be fixed by the council which may increase or diminish the same at will, a referendum ordinance undertaking to fix such salaries is void. Ellis v. Holcombe, 69 S. W. (2d) 449; Foshee Refining Co. v. State, 73 S. W. (2d) 1098; Southwestern Tel. & Tel. Co. v. City of Dallas, 104 Texas 114, 134 S. W. 321; 39 Texas Jur. 212.

*R. R. Lewis, W. M. Holland, Geo. D. Neal, W. E. Boyd* and *W. Ray Scruggs,* all of Houston, for defendants in error.

Where the city charter of the City of Houston authorizes the city council to establish and fix the salary of any office that, in its opinion, may be expedient for the conduct of the city's business or government, and the city charter further providing that the people of the city shall have the power of direct legislation by means of initiative and referendum, and the city council of its own motion may submit to popular vote for adoption or rejection any proposed ordinance or resolution, the fixing of minimum salaries of certain officers of the city government and the fire department of the city is a proper subject for the city council of its own motion to submit to the popular vote of the people. Davis v. City of Houston, 264 S. W. 625; State ex rel. Pike v. City of Bellingham, 183 Wash. 439, 48 Pac. (2d) 602; City of Richmond v. Allred, 123 Texas 365, 71 S. W. (2d) 233.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was instituted in the district court of Harris County, Texas, by the Taxpayers' Association of Harris County, Texas, a private corporation, and a number of individual prop-

erty taxpayers of the City of Houston, Texas, hereinafter designated the Association et al., against the City of Houston, Texas, a municipal corporation, and a number of its officers and agents not necessary to name, hereinafter designated the City et al., to enjoin the enforcement of two ordinances fixing minimum salaries for certain of the officers and employees of the city. One of the ordinances fixes minimum salaries in the fire department, and the other fixes minimum salaries for numerous other officers and employees of the city. Both ordinances were adopted by a vote of the people under the referendum provision of the city's charter. No issue is raised as to the regularity of the election in any of its stages. The petition of the Association et al. in the district court seeks both a temporary and a permanent injunction against the enforcement of such ordinances. This appeal is predicated upon the refusal by the district court of the prayer for a temporary injunction. Such refusal was had after a full hearing of the facts. The action of the district court was in all things affirmed by the Court of Civil Appeals at Galveston. 100 S. W. (2d) 1066. The case is before this Court on writ of error granted on application of the Association et al.

As already indicated, the two ordinances here attacked were adopted under the referendum provision of the City's charter by a majority vote of the qualified voters of the City of Houston, duly ordered and held for that purpose. The Association et al. contend that the initiative and referendum provisions of the charter have no reference to the fixing of minimum salaries for the city's officers and employees, because Section 1 of Article V of such charter by its express provisions places that power exclusively within the jurisdiction of the City Council.

As we understand it, Section 1 of Article V was a part of the City's original charter. Among other things it provides that the business affairs of the City shall be conducted by a Mayor and four Aldermen, who shall be elected by the people. Among others, it contains the following provisions:

"Compensation of all officers, except the Mayor and Aldermen, shall be fixed by the City Council, which may increase or diminish the same at will, or abolish entirely any office at any time, except as to the officers above mentioned, and until their two years' term of office expires."

Article VIIb of the City's charter was adopted in 1913 as an amendment to the original charter. It contains the initiative and referendum provisions thereof. Such provisions were not

in the original document. Section 1 of such article reads as follows:

"Section 1. General Power.—The people of Houston, in addition to the method of legislation hereinbefore provided, shall have the power of direct legislation by the initiative and referendum."

Section 2 of Article VIIb provides the manner in which the initiative shall be exercised. Section 3 of the same article provides for the referendum. Section 4 of the same article reads as follows:

"Sec. 4. Submission by the Council.—The Council, of its own motion, may submit to popular vote for adoption or rejection or repeal at any election any proposed ordinance or resolution or measure, in the same manner and with the same force and effect as provided in this Article for submission on petition."

Section 17b of Article IX of the City's charter, which section was also adopted as an amendment to the original document in 1913, reads as follows:

"Sec. 17b. Publication of Ordinances and Resolutions.—The City Secretary shall give notice of the passage of all ordinances and resolutions, except those granting franchises (which shall be published as now provided by the Charter), by causing to be published in some daily newspaper in the City of Houston at least once within 10 days after their passage and approval, the caption or title of such ordinances and resolutions, and such ordinance or resolution shall take effect and be in full force and effect from and after its passage and approval, unless otherwise provided therein; provided, that all such resolutions and ordinances shall be subject to the provisions of this Charter for a referendum, and any action taken by authority of same shall be and become null and void should a referendum petition be filed on such ordinance or resolution as provided in Article VIIb of this Charter."

1  To our minds the provisions of the initiative and referendum amendments to the City's charter are plain and unambiguous. Prior to 1913 the power of the City to legislate was by the very terms of the charter vested exclusively in the City Council. The very purpose of amending the charter by adopting the initiative and referendum provisions above mentioned was to change this, and give the people of the City the power to legislate direct, either by initiating the legislation themselves or by referendum passed by the Council. A reading of Section 1 of Article VIIb,

supra, discloses that it is very broad in its terms and expressly gives the people the power to direct legislation by the initiative and referendum. Also, it expressly provides, in substance, that such method of legislation is *in addition* to the method of legislation heretofore provided. The method heretofore provided was by direct and exclusive action of the City Council. It is therefore evident that Section 1 of Article VIIb, in effect, expressly provides that the City, *in addition* to the power to legislate by action of the Council, may legislate by vote of the people. Certainly under the original charter the Council would have had the right to pass these ordinances fixing minimum salaries for the officers and employees named therein. It must follow that under the various referendum provisions of Article VIIb the people now have the same right. In other words, we think Article VIIb is very broad in its provisions and gives the people, except in certain instances, which we will later discuss, the same right to legislate that the Council has. In a certain sense, under the City's charter, this right is even paramount to that of the Council.

**2, 3** As shown by Section 1 of Article VIIb, supra, of the City's charter its initiative and referendum provisions are confined to legislative matters only. This is true, because such section by its express terms only gives the qualified voters of the City the power to legislate. The Association et al. contend that these ordinances are invalid because they involve a matter that is purely administrative and not legislative. We overrule this contention. It is true that in many instances, and under certain conditions, the fixing of salaries is administrative in its nature. In spite of this, such matter also appeals to the law-making power. The creation of an office is a legislative function. If the legislative arm of the government has the power to create an office and prescribe its duties, it must surely follow that it has the power to prescribe its emoluments. Furthermore, we think the people generally are vitally interested in having their officers and employees paid a living wage, and a wage commensurate with the duties involved. It follows that in a certain sense the prescribing of minimum salaries and wages for public officers and employees is but an expression of a public policy. We cite the following authorities upholding the right to fix salaries under the initiative and referendum provisions of city charters: State ex rel. Pike v. City of Bellingham, 183 Wash. 439, 48 Pac. (2d) 602; State ex rel. Loe v. Davis, City Auditor, 41 S. D. 327, 170 N. W. 519; State ex rel. Martin v. Eastcott, 53 S. D. 191,

220 N. W. 613; State ex rel. Leo v. City of Tacoma, 184 Wash. 160, 49 Pac. (2d) 1113.

4 Further discussing the above matter, we think that the power of initiative and referendum, as provided for in the City's charter, is the exercise by the people of a power reserved to them, and not the exercise of a right granted. It follows that, in order to protect the people of the City in the exercise of this reserved legislative power, such charter provisions should be liberally construed in favor of the power reserved. Ley v. Dominguez, 212 Calif. 587, 299 Pac. 713.

5 There are certain cases where, under the peculiar provisions of a city's charter or the peculiarity of certain legislation, it has been held that certain matters do not come within the purview of initiative and referendum provisions of city charters. The case of Southwestern Tel. & Tel. Co. v. City of Dallas, 104 Texas 114, 134 S. W. 321, cited by the Association et al., is one of these. In that case there was an attempt to fix telephone rates within the City of Dallas by vote of the people under the initiative provisions of the charter. The charter expressly provided that the City should have the right, acting through its Board of Commissioners, to fix such rates after a hearing on their reasonableness. The Court condemned the Dallas ordinance, not because the fixing of telephone rates was not a legislative matter, but because the charter expressly provided for a fair hearing before the Commissioners, and because the hearing contemplated by the charter could not be had in an election by the people. We quote the following from the opinion in the Dallas case:

"The method by which an ordinance may be submitted is prescribed in paragraph 1 of article 8. The language is: 'Any proposed ordinance may be submitted to the Board of Commissioners by a petition signed by registered electors of the city, equal in number to the percentages hereinafter required,' etc. Counsel for the city seem to understand this language to mean that an ordinance on any subject of legislation mentioned in the charter may be presented under this method of initiation to the Board of Commissioners and that such presentation precludes action by the Board of Commissioners. We are of opinion that the language, 'any proposed ordinance,' means that an ordinance upon any subject to which the initiatory method is applicable may be presented in the manner prescribed to the Commissioners. It does not mean that all ordinances upon any

subject of legislation mentioned in the charter may be enacted in that manner.

"Paragraph 27 of section 8 prescribes that the authority to regulate such business as that involved in this litigation shall be exercised by ordinance, but it does not provide by what department the ordinance shall be enacted, whether by the Board of Commissioners on their own initiative, or by the voters of the city by the initiatory method prescribed in paragraph 1 of article 8 of the charter. Paragraph 7 of the same section and article reads: 'The right is hereby delegated to the city of Dallas, acting through its Board of Commissioners, to determine, fix and regulate the charges,' etc., after a fair hearing on the reasonableness of such rates.

"In the exercise of the power to regulate and fix rates, etc., there must be a body who can hear evidence and decide upon the reasonableness and unreasonableness of the rate or regulation, and if that can not be done by the initiative—the popular vote—then, the authority can not be exercised in that manner. Can it be necessary to offer argument to show to any man that such hearing as the law provides could not be had in a campaign before the electorate of the city? It is too manifest for controversy.

"Can it be supposed that a Legislature would require a Board of Commissioners to secure a fair hearing to the party to be affected and yet would not permit some unknown party to draft an ordinance, specifying rates and regulations, without the knowledge of any facts, and submit such ordinance to the popular vote where there can neither be an investigation nor any character of ascertainment of the facts? That would be to place upon the language of the charter an unreasonable construction. If the charter provided for the submission of such issues to the voters at large, its validity would, at least, be questionable. In Telephone Co. v. Los Angeles, 211 U. S. 280, that question was raised and the court said:

" 'The charter of the city also contains a provision that upon petition of fifteen percent of the voters of the city any ordinance proposed must be submitted to the people and may be by them adopted. It is said, therefore, that the power of rate regulation might be, in this manner, exercised directly by the electorate at large. It may well be doubted whether such a result was contemplated by the Legislature. There are certainly grave objections to the exercise of such a power, requiring a careful and minute investigation of facts and figures by the general body of the people, however intelligent and right-minded.'

"The charter of a city is to its citizens and officers the measure of their authority over persons and property. That charter secured to the plaintiff in error 'a fair hearing,' and, as such hearing was not and could not be had in the adoption of this ordinance, it was not enacted in accordance with the charter and is void."

6 As already indicated, these ordinances were submitted to a vote of the qualified voters of the City without any restriction as to whether or not such voters were also property taxpayers. Section 3a of Article VI of our State Constitution, in so far as pertinent here, provides that when an election is held in any city "for the purpose of issuing bonds or otherwise lending credit, or expending money or assuming any debt, only qualified electors who own taxable property in the * * * city * * * where such election is held, and who have duly rendered the same for taxation shall be qualified to vote * * *." It is contended by the Association et al. that these ordinances involve expending money within the meaning of the above constitutional provision, and therefore could not come under the initiative and referendum provisions of Article VIIb of the City's charter. It is evident that the initiative and referendum provisions just mentioned contemplate that all qualified voters of the City shall be allowed to vote without reference to whether or not they are property taxpayers. It therefore follows that the validity or invalidity of these ordinances in this regard must turn on a decision of the question as to whether or not the fixing of minimum salaries or wages for City officers and employees is "expending money" within the meaning of the above constitutional provision. In our opinion, it would be going entirely too far to say that the passing of an ordinance fixing minimum salaries by vote of the people is "expending money" within the meaning of such constitutional provision. In this regard we, of course, draw no distinction between fixing minimum salaries and fixing salaries. We simply say that the fixing of minimum salaries or the fixing of salaries for City officers or employees generally is not "expending money" within the meaning of Section 3a of Article VI of our State Constitution.

Counsel for the Association et al. cite the case of City of Richmond v. Allred, 123 Texas 365, 71 S. W. (2d) 233, in support of the proposition that the voting of minimum salaries for City officers and employees is "expending money" within the meaning of Section 3a of Article VI of our State Constitution. In that opinion it is shown that the City of Richmond attempted to issue revenue bonds under authority of Article 1111, R. C. S.

1925, as amended. The governing authorities of the City submitted the question to a vote of the qualified voters of the City without any restriction as to whether or not such voters were property taxpayers. The Attorney General refused to approve the bonds for that reason, and the City applied to this Court for permission to file petition for mandamus to compel such approval. The petition which accompanied such application showed that such bonds were sought to be issued for the purpose of raising funds to be expended in purchasing an existing water plant and in constructing extensions thereto. Under such a record, permission to file the petition for mandamus was refused on the ground that the matter submitted to the voters involved the expenditure of money within the meaning of the above constitutional provision, and also within the meaning of Section 3 of Article VI of our Constitution. We think that the holding in the City of Richmond case, supra, can not be said to support the contentions of the Association et al. here. In other words, we think there is a vast difference between voting on revenue bonds to raise funds, the proceeds of which are to be expended to purchase a municipal water plant, and the mere voting of an ordinance for fixing minimum wages for City officers and employees. The first mentioned enterprise involved directly the expenditure of money. The second involved principally a matter of public policy. What we have said with reference to Section 3a of Article VI applies with equal force to Section 3 of the same Article.

7  Section 4 of Article V of the City's charter reads as follows:

"Sec. 4. Compensation of Employees.—There is hereby established as a minimum wage for all of the day laborers of the City of Houston the sum of two dollars per calendar day of eight hours during which they shall work and it shall be unlawful for any officer, agent or employee of the City of Houston to require or permit any day laborer of the City of Houston to perform work for the city for a less wage than two dollars per calendar day for each and every day during which he shall be so employed or performing work for the City of Houston. Provided, further, that should any such laborer be required or permitted in the case of an emergency to work more than eight hours in any one calendar day he shall be paid for all time over said eight hours on the basis of eight hours constituting a day's work."

If we understand their briefs and arguments, the Association et al. contend that by the application of the rule "Expressio

unius est exclusio alterius" (The expression of one thing is the exclusion of another), the two ordinances here involved are forbidden by the above charter provision. We are unable to follow this line of reasoning. The above charter provision deals with "day laborers." These ordinances deal with entirely different classes of employees. Certainly the above rule of statutory construction would not prevent the City from fixing minimum wages by ordinance for City employees not included in the charter minimum wage provision. Furthermore, the above charter provision merely fixes a minimum wage for "day laborers." It contains nothing that would prevent the City from providing a greater wage than that provided by the charter even for day laborers.

The Association et al. contend that these ordinances are void because they deny the City the power to contract conferred upon it by the Constitution and laws of this State, and by its charter. We overrule this contention. These ordinances do not deny the City the right or power to contract. They merely, to some extent, regulate such power.

The Association et al. contend that the enforcement of these ordinances should be enjoined because if the City operates thereunder a large deficit will be created in the City's funds. The testimony does not establish this contention as a matter of law. The judgment therefore determines it in favor of the City et al. It is therefore not necessary for us to decide the question of law which would be involved if a deficit had been created.

Section 19a of Article II of the City's charter reads as follows:

"Sec. 19a. Certificate of Controller Prerequisite to Ordinance, Etc., Appropriating Money.—No contract, agreement or other obligation involving the expenditure of money in excess of one thousand dollars shall be ordered, authorized entered into or executed by any officer of the city unless same be by authority of ordinance, nor shall any ordinance, resolution or order for the appropriation of money, or for the making of any contract, agreement or other obligation requiring the expenditure of money, be passed by the Council unless the Controller first certify to the Council that the money required for such contract, agreement, obligation or expenditure is in the treasury and not appropriated for any other purpose, or that the funds will be received into the treasury and be available before the maturity of said obligation, and that the said funds anticipated have not been already appropriated for any other purpose, which certificate shall be filed and immediately recorded.

"If moneys be not actually in the treasury to the credit of the fund from which it is to be drawn, but will be received into the treasury before the maturity of the obligation, the Controller shall not certify that the funds will be available unless the moneys are to be derived from lawfully authorized bonds sold and in process of delivery or that the funds are anticipated to be derived from current or general revenues, such as from taxes or assessments, or from sales of services, products or by-products, or from any undertakings, fee charges, accounts and bills receivable, or from other items in process of collection, and will be available before maturity of the obligation; and he shall show from what source the funds will be derived, and if the amount anticipated is to come from the general revenues of the city, he shall certify further that the amount, including the aggregate of amounts previously specified or anticipated, either by budget or appropriation, will not exceed the revenues levied or assessed for the fiscal year.

"Any sum certified by the Controller shall not thereafter be considered as unappropriated or subject to reappropriation until the city is discharged from the contract, agreement or obligation."

The Association et al. contend that these ordinances are invalid because the City Controller did not make the certificate provided for by the above charter provision. We think the "contract, agreement or other obligation" referred to in the above charter provision has no remote reference to ordinances such as these, which merely express public policy of the City by stipulating minimum salaries and wages for City officers and employees.

The judgment of the Court of Civil Appeals, which affirms the judgment of the trial court, is affirmed.

Opinion delivered May 12, 1937.

Rehearing overruled June 23, 1937.