**EDWARDS et al. v. MURPHY et al.**

No. 15411.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 20, 1953.

Rehearing Denied March 20, 1953.

Heard L. Floore, S. G. Johndroe, Jr., Joe McMinn and R. E. Rouer, all of Fort Worth, for appellants.

Willis & McEntire, of Fort Worth, for appellees.

MASSEY, Chief Justice.

From an order of mandamus issued by a district court of Tarrant County to the City of Fort Worth and its councilmen, commanding that it proceed with reasonable dispatch to submit proposed city charter amendment to a vote of the electorate, the City and its councilmen appeal. Affirmed.

Original suit in this case was brought by John H. Murphy and others, appellees herein, as members of the fire department of the City of Fort Worth, against the City of Fort Worth and its councilmen, appellants herein, based upon a petition by more than ten per cent of the qualified voters of the City of Fort Worth, reading as follows:

"Be It Enacted, By Charter Amendment To The City Of Fort Worth The Following To Wit:

"All members of the Fort Worth Fire Department engaged in Fire Fighting or in the suppression of Fire shall not be required to work more than sixty (60) hours in any one week or more than one hundred and twenty (120) hours in any two week period, this shall include all apprentice Firemen, Firemen 1st Class, Drivers, Lieutenant, Captains, District Chiefs, and Senior District Chiefs, or any member of the Department who shall ever work in any of these capacities. The members of the Fire Department in these ranks or positions shall continue to work in shifts or tours of duty in the same manner as at present, which shall be 24 hours on duty and 24 hours off duty. Shifts shall be changed at 12 o'clock noon of each day, with the members of these respective divisions of the Fire Department divided into two (2) equal shifts, except that there shall be designated by the Chief of the Fire Department or any Fire Department Officer, whom the Chief might designate, one (1) twenty-four (24) hour tour of duty in each week, which would ordinarily be a regular or normal tour of duty, at which time each such Fireman shall not be required to work, thereby amounting to a maximum of sixty (60) hours in any one week or one hundred and twenty (120) hours in any two-week period.

"All other members of the Fire Department shall not be required to work more forty (40) hours in any one week or more than eighty (80) hours in any two week period. This shall include all Assistant Chiefs, Fire Marshals, Assistant Fire Marshals, Chief Drill Instructors, Assistant Drill Instructors, Fire Inspectors, Executive Officers, Chief Fire Alarm Operators, Fire Alarm Operators, Custodians of Mechanical Equipment, Mechanics, Secretaries to the Chief, Fire Prevention Secretaries, and Secretaries to the Assistant Chief, or any member of the Fire Department who shall ever work in any of these or other administrative capacities.

"The provisions of this amendment shall not prevent the Chief of the Fire Department or any Officer of the Fire Department, whom the Chief might designate, from requiring any member of the Fire Department to work hours in excess of the maximum hours prescribed by the provisions of this amendment, or to be present at meetings called by the Chief of the Fire Department or any Fire Department Officer whom the Chief might designate, however any such Fireman required to work extra hours or attend meetings on his off duty time shall be compensated, in addition to his regular salary, an amount of money at the rate of one and one-half (1½) his regular rate of pay.

"The provisions of this charter amendment shall not be construed to be violated when members of the Fire Department exchange time with each other or hire a substitute to work in his place, with the consent of the Fire Chief or any Fire Department Officer whom the Chief might designate.

"If the provisions of this charter amendment are adopted by a majority of the qualified voters voting in this election, the base salaries in effect on Oct. 1, 1951, for

each classification in the Fire Department shall be established as a minimum base salary for members of the Fire Department in each classification.

"If any part or parts of this charter amendment shall be held unconstitutional, such unconstitutionality shall not affect the validity of the remaining parts of this charter amendment.

"If any section of the Charter of the City of Fort Worth is in conflict with this charter amendment as it pertains to wages and hours of work of the Fire Department, such section is hereby repealed.

"To The Mayor And City Council Of The City Of Fort Worth:

"We, the undersigned, who are qualified electors in and of the City of Fort Worth, County of Tarrant, and State of Texas, hereby request that the accompanying proposed legislation in the form of a proposed ordinance, pertaining to maximum periods of work, manner of distribution of salaries and hours of work and minimum compensation, in the Fire Department of the City of Fort Worth be submitted to a vote of the people if not passed by the Council.

| Signature | Residence Address (Street and Number) | Date of Signature | Precinct Number |
|---|---|---|---|

"The State of Texas,
"County of Tarrant:

"I ———, being first duly sworn, on oath depose and say that I am one of the signers of the above petition; that the statements made therein are true, and that each signature appearing thereto was made in my presence on the day and date it purports to have been made, and I do solemnly swear that the same is a genuine signature of the person whose name it purports to be.

"_____

"Sworn to and subscribed before me, this —— day of —— 1951.

"_____

"Notary Public in and for Tarrant County, Texas."

The language of the legislation proposed by the petition is actually an enlargement of the provisions under title of "Labor" of the Texas Penal Code, Article 1583 et seq., Vernon's Ann.P.C. The proposal restricts certain of the classifications of firemen to work not more than 60 hours per week or 120 hours in a biweekly period, rather than the 72 hours per week or 144 hours biweekly, prescribed maximum period in the Penal Code; and restricts certain other of the classifications to work not more than 40 hours per week or 80 hours biweekly. The proposed legislation also prescribes that the work shifts of certain classifications of firemen would change at 12:00 noon each day and would be on the basis of 24 hours of duty as to each shift, with one of the members of each shift to have an additional day off (or shift off) each biweekly period, additional to the time prescribed by statute. In other words, under the proposal the firemen under these classifications would work only five (5) shifts biweekly, rather than six (6) shifts prescribed as maximum under the law. Further, the proposal has an addition to the effect that the firemen, with the consent of the fire chief or his agent, could hire a "substitute" to work for him; this being an addition to the "exchange work" as between firemen allowed by statute. The amendment further prescribes that the minimum base salary for the firemen would be the same as it was as of date October 1, 1951, as to each classification of firemen in the City of Fort Worth.

Article 11, sec. 5, of the Constitution of Texas, Vernon's Ann.St., reads: "Cities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their

charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State; * * *."

Article 1165, Vernon's Ann.Civ.St., provides generally the same as such Constitutional article, and then continues as follows: "No city charter shall be altered, amended or repealed oftener than every two years. The governing body of such city *may*, by two-thirds votes of its members, *or upon petition of ten per cent of the qualified voters of said city, shall provide by ordinance for the submission of the question,* 'shall a commission be chosen to frame a new charter.' " (Emphasis ours.)

Article 1166, V.A.C.S., reads: "The ordinance providing for the submission of such question shall require that it be submitted at the next regular municipal election, if one should be held, not less than thirty nor more than ninety days after the passage of said ordinance; otherwise it shall provide for the submission of the question at a special election to be called and held not less than thirty days nor more than ninety days after the passage of said ordinance and the publication thereof in some newspaper published in said city. * * *"

Article 1170, V.A.C.S., reads: "When the governing body desires to submit amendments to any existing charter and in the absence of such petition, said body may, on its own motion, *and shall upon the petition of at least ten per cent of the qualified voters of said city, submit any proposed amendment or amendments to such charter. The ordinance providing for the submission of any proposed amendment shall make the same provisions for holding the election and publishing notice thereof as provided in the second article of this chapter* [Art. 1166]. * * * Every amendment submitted must contain only one subject, and in preparing the ballot for such amendment, it shall be done in such manner that the voter may vote 'Yes' or 'No' on any amendment or amendments without voting 'Yes' or 'No' on all of said amendments. Each such proposed amendment, if approved by the majority of the qualified voters voting at said election, shall become a part of the charter of said city. * * *" (Emphasis ours.)

The charter of the City of Fort Worth has no provision whatsoever with reference to initiative or referendum connected with the amendment of the city charter. It does have provision as to initiative of the people for the holding of an election to enact a city ordinance. It provides that the initiative petition shall bear the signatures of twenty (20%) per cent of the voters of the city, and further, that it be executed in a certain manner and with the affidavit required to recite particular facts. It further provides that the petition set out in its body the names and addresses of at least five (5) registered voters to be regarded as the "committee" for such petitioners to file the same; that they file the same with the city secretary, who shall check as to the sufficiency of the voting status of the signers of the petition, then for him (the city secretary) to submit it to the council—or, in the event he finds it insufficient, to so certify and allow the "committee" an opportunity to make it sufficient,—then for him (the city secretary) to submit it to the council. The council's duty is then to pass it, as written, or not,—and if not, and the "committee" demand (of the council) in writing that it be submitted to a vote of the people, it shall be so submitted, as written, at the next city election. The only person under the charter authorized to exercise any discretion is the city secretary, and that discretion is limited to the determination of whether the requisite number of qualified voters have signed.

The provisions with reference to such procedure toward holding an election on an amendment by way of city ordinance is not restricted as regards the duration of time between when such legislative changes may be submitted or enacted, and submission is prescribed to be made at "the next election occurring in the city." This is different from the law with reference to enactment of amendments to city charters, such law providing that an election to so amend a city charter could be held only once every two years. There is nothing in the Consti-

tution or the statutes which requires an initiative petition to amend a city charter to require any particular form of execution, and the only requirement made of the signer of such a petition is that he must be a qualified voter of the city whose charter it is proposed to amend.

Article 1, Sec. 2 of the Constitution of Texas, reads as follows: "All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit. The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think expedient." This section of the Constitution is a true declaration of the principles of republican state governments. Brown v. City of Galveston, 1903, 97 Tex. 1, 75 S.W. 488. The same would apply to any and all subsidiary governments, including the incorporated cities of this state.

■ The general rule of construction of provisions of law in government or as to remedial legislation is that the same be liberally construed to the end of carrying out the great principles of government by the people (see 9 Tex.Jur., p. 432, sec. 22, Constitutional Law, 39 Tex.Jur., p. 273, sec. 145, Statutes, and 30 Tex.Jur., p. 53, sec. 24, Municipal Corporations), but that powers conferred thereunder upon government officials be strictly construed. 34 Tex.Jur., p. 443, sec. 68, Public Officers. It follows that an initiative petition on the part of a certain percentage of an electorate to its officials of a proposed provision of law should be liberally construed to the end that any rights of the electorate as a whole, not specifically yielded up by them, be preserved unto them. Any initiative petition presented to the City Council under either the legislative enactments as to charter amendment, or charter enactments as to ordinance amendments, upon a matter expressive of public policy, should be construed as liberally in favor of the power reserved to the people as the instrument itself will permit, to the end that the right of the people to determine all proper questions by democratic election be secure. Taxpayers' Ass'n of Harris County v. City of Houston, 1937, 129 Tex. 627, 105 S.W.2d 655.

With this our premise and rule and guide, we examine the complaints of the appellant to the action of the trial court.

■ Appellant's first point contends that that section of the petition at the end thereof addressed to the Mayor and City Council as a prayer indisputably establishes that the proposal was to the City to enact an ordinance, and failing to do which, that they submit such ordinance to the electorate; and that such could not be so submitted to the people as an ordinance as it failed to have the requisite twenty (20%) per cent of the voters of the City of Fort Worth as signers of such petition. With this analysis we are unable to agree. Immediately before this section which could be termed a prayer, its body and caption refer to it as being a charter amendment a total of seven (7) times. Throughout its entire body the legislation or proposed legislation is denominated a charter amendment. It further provides that if any present provision of the charter is in conflict, such provision is repealed. No ordinance could repeal any part of a city charter. In any event, such initiative petition should be construed liberally, with a view to protecting and preserving the right of the people to determine the matter by democratic election. Further, even assuming there might appear to be some repugnancy, the instrument should be construed so as to reconcile any such, if this be possible, and to give effect to the whole and every part thereof. This rule of construction applied to the petition, it is established that a petition to amend a city charter, bearing signatures of the requisite ten (10%) per cent of the qualified voters of the city, was made to the governing authority of the City of Fort Worth, under authority of the statutes heretofore set out. The requirements of state law having been complied with, these people thereby became, as to the matters in question, the legislative branch of the city government. By their so having acted, it became incumbent upon

the members of the City Council, like other city officials and employees, as ministerial officers in the legislative process, burdened with the mandatory obligation of performing the duties imposed upon them incidental to the carrying out the initiative procedure, to proceed, as provided by statute, to take the necessary prescribed action to hold an election and submit to the people of the City of Forth Worth the proposed legislation, as an amendment to the city charter. Glass v. Smith, 1951, 150 Tex. ——, 244 S.W.2d 645.

■ No discretionary power having been granted to them, the members of the City Council could exercise no discretion as to whether or not to order such election. 34 Tex.Jur., p. 443, sec. 68, Public Officers, supra.

■ Appellants, urging that the proposed legislation of the petition is for enactment of an ordinance rather than for amendment of the charter, refer to the formalization in the latter part of the petition, which meets the strict requirements of the charter as to affidavit to and formalization of ordinance initiative petitions. No such formality is required to such a petition to amend a city charter. The appellants cannot be heard to complain because the petitioners did more than the law required in formalizing their execution of the petition, nor may they claim any advantage because thereof.

■ Appellants contend that the subject matter of the proposed charter amendment had been withdrawn from the charter-making electorate of the City of Fort Worth by Section 8 of Article 1269m, V.A.C.S., and Section 16a of the same Article. The general subject matter being legislative in character, the question is whether it has been withdrawn as matter as to which the voters of the city may legislate. In the Article mentioned is nothing expressly or by necessary implication withdrawing the power in question from the electorate, or which confers authority to deal with the matters here involved exclusively upon the Civil Service Commission and the City Council. Glass v. Smith, supra.

Furthermore, the proposed amendment does not seek to change established classification of firemen, nor establish new classifications, but accepts classifications as already in existence and prescribes legislation as to such. It principally shortens the statutory maximum work hour provisions of Article 1583 et seq., V.A.P.C.

■ Appellants complain that the proposed charter amendment consisted of more than one subject and hence could not be submitted to vote of the electorate, as coming within the prohibitory provisions of Article 1170, V.A.C.S., heretofore set out. This contention is without merit. The provisions already in the statutes of Texas relating to the same matter are found under Article 1583 et seq., V.A.P.C., under title or subject of "Labor." The subject matter of the proposed legislation is the same. This is a title which would fairly and adequately describe and wholly cover the subject matter in question. Garitty v. Halbert, Tex.Civ.App., Dallas, 1921, 235 S.W. 231.

Appellants complain that the proposed charter amendment contains a substantial amount of administrative and executive subject matter which the Mayor and City Council of the City of Fort Worth had no authority to separate from the remainder of the proposed legislation. These points are best demonstrated by noting the one outstanding example in the proposed amendment providing that the work-shifts of certain classifications of firemen should change at noon of each day.

■ While this and other provisions of the amendment are clearly managerial, yet the proposed amendment must be submitted to the electorate, under the general rule that their legislative power is limited only by the express provisions of superior authority, in this case by the Constitution and laws of the State of Texas. The proposed amendment being a charter amendment, thus in the event of its adoption as an amendment having the same dignity as the balance of the charter, the City's charter provisions need not be referred to. Though the charter might create by its provisions conditions and delegations of managerial

powers which would negate the validity of the proposed amendment as an ordinance, this would not be the case as to a proposed charter amendment.

■ Moreover, appellees, in any event, being otherwise entitled to have the election called and held, cannot be defeated in that right by the refusal of appellants to perform purely ministerial duties on the ground that in their opinion the amendment, or a part thereof, would be invalid if adopted. Glass v. Smith, supra. To allow such a refusal to stand until the courts could make a construction in accordance with or to the contrary of that arrived at by a city's governing body would invite interminable litigation unduly delaying remedial legislation.

■ In some jurisdictions discretionary authority on the part of a city's governing authorities has been held to exist as to the validity of legislation proposed by initiative petition, the cases following this as a principle of law in the main relating to initiative petitions to enact ordinances. See State ex rel. Cranfill v. Smith, 1932, 330 Mo. 252, 48 S.W.2d 891, 81 A.L.R. 1066, and the decisions following. Even so, any doubt as to the validity of the petition should be decided in favor of the people who signed it, rather than in favor of the city legislative body. 62 C.J.S., Municipal Corporations, § 456e, page 883.

In Texas, however, under the authority of Glass v. Smith, by the Supreme Court, and the cases therein discussed on the questions, the city's governing authorities have no such discretion, even in relation to a proposed ordinance, unless it appears that the subject matter thereof has been withdrawn from the field in which the initiatory process is operative.

Appellants complain of the insufficiency of the petition for mandamus filed in the trial court to establish a basis for the issuance of the writ. We have carefully examined the authorities cited by appellants with a view to testing the sufficiency of such petition. The petition is found to conform in all requisite matters, upon the issues, to the requirements of law.

All assignments of error are overruled, and judgment of the trial court is affirmed.