

**NUMBER 13-08-00267-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**CITY OF CORPUS CHRISTI, TEXAS,**                                    **Appellant,**

**v.**

**JOE O'BRIEN, ET AL.,**                                                    **Appellees.**

---

**On appeal from the 28th District Court of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela**
**Memorandum Opinion by Justice Garza**

Appellant, the City of Corpus Christi (the "City"), appeals from a permanent

injunction issued in favor of appellees, Joe O'Brien, Jack Gordy, and the Corpus Christi

Taxpayers Association, Inc.[1] (collectively "O'Brien"). By issuing the permanent injunction,

the trial court prohibited the City from allowing the Mayor and members of the City Council

---

[1] On March 28, 2008, the City filed a plea to the jurisdiction as to the Corpus Christi Taxpayers
Association, Inc. (the "Association"), alleging that it was not a taxpayer and, therefore, did not have standing
to bring an action. In its "FINAL JUDGMENT AND PERMANENT INJUNCTION," the trial court concluded that
it had "jurisdiction of this case and of all parties." The City does not re-urge its standing argument on appeal
as to the Association.

to participate in the City's health insurance plan on the same basis as the City's full-time employees. By one issue, the City contends that the trial court erred in issuing the permanent injunction because the City Charter does not bar the Mayor or City Council members from participating in the City's health insurance at the same level as the City's full-time employees. We dissolve the permanent injunction, reverse the judgment of the trial court, and render judgment in favor of the City.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The City maintains a group health insurance plan for its employees. Prior to this lawsuit, the Mayor and members of the City Council were allowed to participate in the group health insurance plan on the same basis as the City's full-time employees. In fact, the Mayor and members of the City Council have participated in the group health insurance plan for over twenty years.

On July 24, 2007, the City Council passed Ordinance No. 027358, which provided the following:

> **Sec. 39-309. Coverage under the [C]ity's group health plan for eligible employees and members of the City Council.**
>
> . . . .
>
> (c) Members of the City Council are eligible for the City's group health plan coverage, and shall contribute at the same rate as full-time employees for the cost of such coverage.
>
> (d) Members of the City Council shall contribute fifty (50) per cent [sic] of the cost for dependent group health plan coverage, if such coverage is elected.

(Emphasis in original.) Subsequently, O'Brien filed suit, seeking to: (1) declare Ordinance No. 027358 void as a matter of law; and (2) enjoin permanently the City from paying health insurance premiums on behalf of the Mayor and members of the City Council in excess of

the compensation levels provided in article II, section 7 of the City Charter.[2] Essentially, O'Brien contended that the City's payment of health insurance premiums on behalf of members of the City Council and the Mayor constituted compensation and, therefore, exceeded the compensation levels provided in the City's Charter—$6,000 per year for members of the City Council and $9,000 per year for the Mayor.

On April 11, 2008, the trial court conducted a trial on stipulated facts. The parties stipulated to the following relevant facts:

1.  Council members and the Mayor are required to contribute their own funds for such insurance at the same rate as full-time employees, and, like full-time employees, they are allowed to procure coverage for their dependants by paying one-half of the cost of such coverage.

2.  The City has offered City Council members and the Mayor health insurance on the same basis as full-time employees for over 20 years.

On April 24, 2008, the trial court granted O'Brien's request for a permanent injunction. The City filed a request for findings of fact and conclusions of law on April 28, 2008. The trial court made the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1.  The Court finds that the *Corpus Christi City Charter provision Article II Section 7* limits compensation of City Council Members to a sum of $6,000.00 annually and to the Mayor a sum of $9,000.00 annually.

2.  The Court finds that the City of Corpus Christi paid premiums for health insurance.

3.  The Court finds that premiums paid for health insurance exceeds [sic]

---

[2] Article II, section 7 of the City's Charter specifically provides that:

(a) Each member of the city council, with the exception of the mayor, shall receive as compensation the sum of six thousand dollars ($6,000.00) during each year of service on the council, such sum to be paid in equal installments throughout the year.

(b) The mayor shall receive as compensation the sum of nine thousand dollars ($9,000.00) during each year of service on the council, such sum to be paid in equal installments throughout the year.

compensation limits per *Corpus Christi City Charter provision Article II Section 7*.

4. The Court finds that *City Ordinance #027358* is inconsistent with *Corpus Christi City Charter provision Article II Section 7*.

## CONCLUSIONS OF LAW

1. The Court concludes that the *Corpus Christi City Charter provision Article II Section 7* limits compensation of City Council Members to a sum of $6,000.00 annually and to the Mayor a sum of $9,000.00 annually.

2. The Court concludes that the City of Corpus Christi paid health insurance premiums for the Mayor and City Council Members and [it] is compensation.

3. The Court concludes that health insurance premiums exceed compensation limits pursuant to *Corpus Christi City Charter provision Article II Section 7*.

4. The Court concludes that *City Ordinance #027358* is in violation of *Corpus Christi City Charter provision Article II Section 7*.

(Emphasis in original.) This appeal ensued.

## II. STANDARD OF REVIEW

The grant or refusal of a permanent or temporary injunction is ordinarily within the sound discretion of the trial court.[3] *See Haq v. America's Favorite Chicken Co.*, 921 S.W.2d 728, 730-31 (Tex. App.–Corpus Christi 1996, writ dism'd w.o.j.); *see also Huntington Park Condo. Assoc., Inc. v. Wayman*, No. 13-05-00464-CV, 2008 Tex. App. LEXIS 1480, at *2 (Tex. App.–Corpus Christi Feb. 28, 2008, no pet.) (mem. op.). On appeal, our review of the trial court's action is limited to the question of whether the action constituted a clear abuse of discretion. *Priest v. Tex. Animal Health Comm'n*, 780 S.W.2d

---

[3] A successful applicant for permanent injunctive relief must demonstrate the following four grounds of relief: (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Montfort v. Trek Res., Inc.*, 198 S.W.3d 344, 350 (Tex. App.–Eastland 2006, no pet.); *Priest v. Tex. Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex. App.–Dallas. 1989, no writ).

4

874, 875 (Tex. App.–Dallas 1989, no writ).

A trial court does not abuse its discretion when its decision is based on conflicting evidence and some evidence in the record reasonably supports the trial court's decision. *Triantaphyllis v. Gamble*, 93 S.W.3d 398, 402 (Tex. App.–Houston [14th Dist.] 2002, pet. denied); *see Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). A clear abuse of discretion arises only when the trial court's decision is not supported by some evidence of substantial and probative character. *Envoy Med. Sys., L.L.C. v. State*, 108 S.W.3d 333, 335 (Tex. App.–Austin 2003, no pet.). A party seeking an injunction has the burden of showing that clear equity demands the injunction. *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986); *Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 887, 890 (Tex. App.–Houston [14th Dist.] 2000, pet. dism'd w.o.j.).

### III. ANALYSIS

In its sole issue on appeal, the City attacks the trial court's findings of fact and conclusions of law, arguing that, as a matter of law, the City Charter does not bar City Council members from participating in the City's health insurance plan on the same basis as the City's full-time employees. More specifically, the City contends that: (1) chapter 172 of the local government code authorizes political subdivisions to provide health insurance to city officials on the same basis as regular employees, *see* TEX. LOC. GOV'T CODE ANN. §§ 172.002(6), 172.004(a) (Vernon 2008); (2) the City Charter does not set a maximum limit on compensation; (3) the City Charter only applies to monetary compensation; and (4) the City "has consistently construed the charter to allow insurance for council members on the same basis as City employees."

Conversely, O'Brien asserts that: (1) the City cannot pay the Mayor or City Council members more compensation that what is clearly provided by the City Charter; and (2) the

5

words contained in the City Charter should be construed to set a maximum compensation limit for the Mayor and City Council members.

## A. Applicable Law

Statutory construction is a question of law, and we review a trial court's interpretation of statutes under a de novo standard of review. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). In construing a statute, we must attempt to determine and to give effect to the Legislature's intent. *Id.* In doing so, we look first to the plain and common meaning of the language of the statute. *Id.*; *see* TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005). We may not construe a provision of a statute so as to render another provision absurd or meaningless. *See Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex. 1987); *Mueller v. Beamalloy, Inc.*, 994 S.W.2d 855, 860 (Tex. App.–Houston [1st Dist.] 1999, no pet.). In construing city charters and municipal ordinances, we use the same rules as we do when construing statutes. *Bd. of Adjustment of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002); *Hammond v. City of Dallas*, 712 S.W.2d 496, 498 (Tex. 1986); *City of Austin v. Hyde Park Baptist Church*, 152 S.W.3d 162, 165-66 (Tex. App.–Austin 2004, no pet.).

## B. Discussion

### 1. Home-Rule Municipalities

At the outset of our analysis, we note that the parties do not dispute that the City is organized as a "home-rule municipality." A "home-rule municipality" is a municipality that "operates under a municipal charter that has been adopted or amended as authorized by Article XI, Section 5, of the Texas Constitution." TEX. LOC. GOV'T CODE ANN. § 5.004 (Vernon 2008); *see* TEX. CONST. art. XI, § 5; *see also In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002). As a "home-rule municipality," the City need not look to the legislature for

grants of power but only for limitations on its powers and may exercise all state powers not inconsistent with the constitution, general laws, or the city's charter. *See In re Sanchez*, 81 S.W.3d at 796; *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998); *see also* TEX. LOC. GOV'T CODE ANN. §§ 51.071-.072 (Vernon 1999) (providing that the home-rule municipality has full power of local self-government). If the legislature decides to preempt a subject matter within a home-rule city's broad powers, it must do so with "unmistakable clarity." *In re Sanchez*, 81 S.W.3d at 796. Moreover, we presume home-rule city charter provisions to be valid, and the courts cannot interfere unless it is unreasonable and arbitrary, amounting to a clear abuse of municipal discretion. *Id.* (citing *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (Tex. 1982); *City of Houston v. Todd*, 41 S.W.3d 289, 295 (Tex. App.–Houston [1st Dist.] 2001, pet. denied)). Because the City is a "home-rule municipality," we must focus our analysis on the City's Charter.

### 2. Health Insurance Benefits as "Compensation"

The crux of the issue pertains to the usage of the term "compensation" in the City Charter. As previously mentioned, article II, section 7 of the City's Charter provides that:

> (a) Each member of the city council, with the exception of the mayor, shall receive as compensation the sum of six thousand dollars ($6,000.00) during each year of service on the council, such sum to be paid in equal installments throughout the year.

> (b) The mayor shall receive as compensation the sum of nine thousand dollars ($9,000.00) during each year of service on the council, such sum to be paid in equal installments throughout the year.

The City Charter does not provide any further clarification as to the meaning of "compensation." The trial court, in its second conclusion of law, stated that the payment of health insurance premiums by the City constituted "compensation."

"Compensation" has been defined as "[r]emuneration and other benefits received

in return for services rendered; esp. salary or wages." BLACK'S LAW DICTIONARY 227 (7th ed. 2000); *see* Op. Tex. Att'y Gen. No. GA-0130 (2003). In applying its plain and common meaning, it is clear that the City's payment of health insurance premiums on behalf of City Council members and the Mayor constituted "compensation" because the premiums were paid in return for services rendered by the City Council members and the Mayor. *See* BLACK'S LAW DICTIONARY at 227. This conclusion is in harmony with several opinions issued by the Texas Attorney General's Office.[4] *See* Op. Tex. Att'y Gen. No. GA-0130 (2003) (concluding that "'[c]ompensation' includes benefits, such as insurance, provided to officers and employees"); *see also* Op. Tex. Att'y Gen. No. GA-0449 (2006) (same). We therefore conclude that the trial court correctly categorized the payment of health insurance premiums as "compensation" in its second conclusion of law.

### 3. "Compensation" Limits in the City Charter

We must now examine the City Charter for any language limiting compensation to City Council members and the Mayor.[5] In doing so, we are mindful of the following statements made by the Texas Attorney General's Office addressing an issue similar to the one in the present case:

> The answer to your first question depends on how the charter provision setting city council members' compensation is construed. If the city charter is construed to limit council members' compensation to the stated amounts, the city may not provide additional compensation in the form of health

---

[4] Although opinions from the Texas Attorney General's Office are persuasive, they are not controlling on the courts. *See Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 82 (Tex. 1997) (citing *Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex. 1996)).

[5] Section 141.004 of the local government code states that the "governing body of a home-rule municipality may set the amount of compensation for each officer of the municipality." TEX. LOC. GOV'T CODE ANN. § 141.004 (Vernon 2008). "Home-rule municipality" officials have broad discretion in exercising their powers—including decisions pertaining to compensation—limited only by the Texas Constitution, general laws, or the City's Charter. *See In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002); *see also Edwards v. Murphy*, 256 S.W.2d 470, 473-74 (Tex. Civ. App.–Fort Worth 1953, writ dism'd) (citing TEX. CONST. art. XI, § 5).

insurance coverage to them.  *See Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643-44 (Tex. 1975) (an ordinance or resolution adopted by a home-rule city must be consistent with the city charter).  On the other hand, if the charter provision is not construed as a limit on city council members' compensation, the city may provide them additional compensation in the form of health insurance. . . .  If the charter sets the maximum compensation for city council members, the City may not provide additional compensation to city council members absent an amendment to the charter.  *See generally* TEX. LOC. GOV'T CODE ANN. § 9.004 (Vernon 1999) (election to amend charter).  If the charter does not set their maximum compensation, the City may provide the additional compensation without a charter amendment.

Op. Tex. Att'y Gen. No. GA-0130 (2003) at 2-3 (footnotes omitted).  The Attorney General's Office further noted that it "does not ordinarily construe city charters or ordinances, in deference to municipal officials' authority to construe their municipality's ordinances and charters." *Id.* (citing Op. Tex. Att'y Gen. Nos. GA-0068 (2003) at 2 n.2; JC-0143 (1999) at 3; JM-846 (1988) at 1).

In its first conclusion of law, the trial court stated that the language contained in article II, section 7 of the City Charter limited compensation to City Council members and the Mayor.  The only piece of evidence O'Brien provided to the trial court indicating that the compensation levels included in the City Charter were intended to be the maximum level of compensation for City Council members and the Mayor was a Corpus Christi Caller Times newspaper article dated March 29, 1987.  In this article, the author, offering his own interpretation of the City Charter, noted that:  "This section also sets maximum salaries at $6,000 annually for council members and $9,000 annually for the mayor."  However, the City Charter is conspicuously devoid of any language placing a strict limit on the compensation afforded to the Mayor or City Council members.  The City Charter merely states that City Council members "shall receive as compensation the sum of six thousand dollars ($6,000.00) during each year of service on the council" and that the Mayor "shall

9

receive as compensation the sum of nine thousand dollars ($9,000.00) during each year of service on the council."[6]  Therefore, in concluding that the City Charter limits compensation to members of the City Council and the Mayor, the trial court has read more into the City Charter than what is actually there, which would be contrary to the drafters' intent.  *See Needham*, 82 S.W.3d at 318 (stating that the reviewing court must look to determine and give effect to the intent of the drafters).

In its fourth conclusion of law, the trial court stated that Ordinance No. 027358 was in violation of the City Charter.  This conclusion hinged upon the trial court's findings that: (1) the payment of health insurance premiums by the City constituted compensation; (2) the City Charter limited compensation to be paid to City Council members and the Mayor; and (3) the payment of the health insurance premiums by the City exceeded the maximum compensation levels contained in the City Charter.  Because the City Charter did not contain any language limiting compensation, we cannot say that the compensation levels were exceeded; therefore, our conclusion undermines the trial court's fourth conclusion of law.

In any event, it is noteworthy that for over twenty years, the City has interpreted the City Charter to mean that City Council members and the Mayor were entitled to participate in the City's health insurance plan on the same basis as the City's full-time employees, which was within their broad discretion.  *See In re Sanchez*, 81 S.W.3d at 796; *see also Edwards v. Murphy*, 256 S.W.2d 470, 473-74 (Tex. Civ. App.–Fort Worth 1953, writ dism'd) (citing TEX. CONST. art. XI, § 5).  Therefore, the promulgation of Ordinance No. 027358 was

---

[6] At the April 11, 2008 hearing, the City argued that the previous version of the City Charter contained language explicitly limiting compensation to the Mayor and City Council members; that language was not included in the current version of the City Charter.  However, the record does not contain a copy of the previous version of the City Charter.

merely an effort to clarify the City Charter and to memorialize the long-standing practice of providing health insurance coverage to members of the City Council and the Mayor, which also was within the broad discretion of municipal officials.[7]  *See* Tex. Loc. Gov't Code Ann. §§ 51.001(2) (stating that the governing body of the municipality may, among other things, adopt and publish an ordinance that is "necessary and proper for carrying out a power granted by law to the municipality or to an office or department of the municipality"); *see also In re Sanchez*, 81 S.W.3d at 796; *see also Edwards v. Murphy*, 256 S.W.2d 470, 473-74 (Tex. Civ. App.–Fort Worth 1953, writ dism'd) (citing Tex. Const. art. XI, § 5).

Based on the record before us, we cannot say that Ordinance No. 027358 is inconsistent with the City Charter.  *See In re Sanchez*, 81 S.W.3d at 796 (stating that all home-rule city ordinances are presumed to be valid) (citing *City of Brookside Village*, 633 S.W.2d at 792; *City of Houston*, 41 S.W.3d at 295).  Accordingly, we disagree with the trial court's conclusion that the ordinance violates the City Charter.

### 4. Health Insurance Coverage and the Local Government Code

Furthermore, several sections of the local government code authorize municipalities to provide health insurance coverage to elected officials.  *See* Tex. Loc. Gov't Code Ann. §§ 172.002(6), 172.004(a) (Vernon 2008).  Section 172.004(a) states that "[a] political

---

[7] The taxpayers of Corpus Christi may petition to amend the City Charter to include limiting language as to compensation of its elected officials.  *See* Tex. Loc. Gov't Code Ann. § 9.004 (Vernon 2008) (detailing the process by which the city charter of a "home-rule municipality" may be amended); *see also Burch v. City of San Antonio*, 518 S.W.2d 540, 543 (Tex. 1975) (holding that a "home-rule" municipality "is empowered to adopt or amend its charter in any manner in which it may desire, consistent and in accordance with the state constitution and the general laws of this [s]tate").  Such an amendment "is adopted if it is approved by a majority of the qualified voters of the municipality who vote at an election held for that purpose."  Tex. Loc. Gov't Code Ann. § 9.005(a) (Vernon 2008).

subdivision[8] . . . directly or through a risk pool may provide health and accident coverage for political subdivision officials, employees, and retirees or any class of officials, employees, or retirees, and employees of affiliated service contractors." *See id.* § 172.004(a). In addition, section 172.002(6) provides that political subdivisions can recognize the service of "elected officials and employees of affiliated service contractors by extending to them the same accident and health benefits coverages as are provided for political subdivision employees.[9]" *Id.* § 172.002(6). Even though the City, as a "home-rule municipality," was authorized to provide health insurance coverage to City Council members and the Mayor in the absence of statutory authorization, sections 172.002(6) and 172.004(a) of the local government code provide additional support for the City's actions. *See id.* §§ 172.002(6), 172.004(a).

Based on the foregoing, we find that the trial court abused its discretion in granting O'Brien's request for a permanent injunction. *See Envoy Med. Sys., L.L.C.*, 108 S.W.3d at 335 (noting that a clear abuse of discretion arises only when the trial court's decision is not supported by some evidence of substantial and probative character). We are not convinced that the City engaged in a wrongful act that warranted permanent injunctive relief. *See Montfort v. Trek Res., Inc.*, 198 S.W.3d 344, 350 (Tex. App.–Eastland 2006, no pet.); *Priest*, 780 S.W.2d at 875. Further, it is clear to this Court that O'Brien failed to meet its burden of showing that clear equity demanded the injunction. *See Christensen*,

---

[8] A political subdivision is defined as "a county, municipality, special district, school district, junior college district, housing authority, or other political subdivision of the state." *Id.* § 172.003(3) (Vernon 2008). Chapter 172 of the local government code does not distinguish between the various types of municipalities that may be formed. *See id.* §§ 5.001-.904 (Vernon 2008) (stating that a municipality can be designated as a "Type A General-Law Municipality," a "Type B General-Law Municipality," a "Type C General-Law Municipality," a "Home-Rule Municipality," or a "Special-Law Municipality").

[9] The local government code defines an "[e]mployee" as "a person who works at least 20 hours a week for a political subdivision." *Id.* § 172.003(2).

12

719 S.W.2d at 163; *see also Bridas Corp.*, 16 S.W.3d at 890.  Accordingly, we sustain the City's sole issue on appeal.

## IV. Conclusion

Having sustained the City's sole issue on appeal, we dissolve the permanent injunction, reverse the judgment of the trial court, and render judgment in favor of the City.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 5th day of February, 2009.