## BRADSHAW et al. v. MARMION, Mayor, et al. (No. 607.)

(Court of Civil Appeals of Texas. El Paso. Oct. 12, 1916.)

1. MUNICIPAL CORPORATIONS ⊂⊃108—ORDINANCE—APPROVAL BY VOTERS—"MAJORITY OF QUALIFIED VOTERS."

Under Houston Heights Charter (Loc. & Sp. Acts 32d Leg. Reg. Sess. c. 16) art. 5, § 6, providing that a special election of the qualified voters shall be called to consider an ordinance increasing the salary of mayor or councilmen, and that, if a "majority of the qualified voters" shall vote in favor of said ordinance, it shall become effective, it is not necessary that a majority of the qualified voters of the city, but only a majority of those voting at that election, vote in favor of the ordinance.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. ⊂⊃108.

For other definitions, see Words and Phrases, First and Second Series, Majority.]

2. MUNICIPAL CORPORATIONS ⊂⊃63(1)—ORDINANCE—ADOPTION—EMERGENCY.

Under article 7, § 4, of that charter, providing that no ordinance shall be finally passed on the day it is introduced, except in case of public emergency, the declaration of the council that an emergency exists, requiring the adoption of an ordinance increasing the salary of the mayor on the day of its introduction is binding on the courts.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 155, 1879; Dec. Dig. ⊂⊃63(1).]

3. MUNICIPAL CORPORATIONS ⊂⊃108 — ORDINANCE—APPROVAL BY VOTERS—QUALIFICATIONS OF VOTERS.

The provision of article 4, § 1, which section pertains to the issuance of bonds and vot-

---

ing taxes to pay them, that in all elections to determine the expenditure of money or the assumption of a debt only taxpayers shall be qualified to vote, does not apply to an election called under the provision of article 5, § 6, upon the adoption of an ordinance increasing the salary of the mayor.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. ⟨key⟩108.]

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by W. D. Bradshaw and others against J. B. Marmion, as Mayor of the City of Houston Heights, and others. From an order dissolving the temporary injunction theretofore issued, the plaintiffs appeal. Affirmed.

Sam, Bradley & Fogle, of Houston, for appellants. Cole & Cole, of Houston, for appellees.

HIGGINS, J. Appellants, as citizens and taxpayers of the city of Houston Heights, in Harris county, filed this suit against said city, J. B. Marmion, mayor thereof, Richter, Trautwein, Luck & Andrews, aldermen of the city, and C. E. Butzer, clerk and auditor thereof, alleging:

That such city was a municipal corporation, with a population of about 11,000, having a special charter granted by the Legislature. That the mayor and four aldermen constitute the city council thereof, and that section 6, art. 5, of the charter of the city reads as follows:

"*Compensation of Officers.*—The compensation of the mayor shall be the sum of $300.00 per annum, to be paid in monthly installments on the first day of each month. The compensation of each of the aldermen shall be the sum of $120.00 per annum, to be paid in monthly installments on the first day of each month. The salaries of the above-named officers shall not be increased until such time as the business of the city shall render it necessary. Thereupon the city council shall by ordinance fix the salaries of the mayor and aldermen at such amounts as it deems just. After said ordinance is passed, the mayor shall call an election of the qualified voters of the city of Houston Heights to be held thirty days after the passage of said ordinance, and if a majority of the qualified voters shall vote in favor of said ordinance said ordinance shall become effective, otherwise said ordinance shall be void, and no election shall be held for a similar purpose within twelve months thereafter.

"The compensation of all of the other officers named in this act shall be fixed by the city council and may be increased or diminished at any time."

That on, to wit, the 3d day of May, 1915, the council of said city adopted the following ordinance:

"An ordinance of the city of Houston Heights increasing the salary of the mayor of the city, and fixing the time and manner of its payment:

"Whereas, the duties of the office of mayor in Houston Heights have become so numerous as to require the exclusive attention of the mayor of the city to the public business of his office, and such duties have increased to such an extent as to render it necessary that the salary of such official be increased:

"Be it therefore ordained by the city council of the city of Houston Heights, Tex.:

"Section I. That the compensation of three hundred ($300.00) dollars per annum provided by section 6 of article 5 of the city charter as the salary of the mayor be and the same is hereby increased to the sum of eighteen hundred ($1,800.00) dollars per annum, the same to be paid in monthly installments of one hundred and fifty ($150.00) dollars per month, on the first day of each month for the services rendered for the preceding month.

"Sec. II. Be it further ordained that for and in consideration of the above increase of salary, that in addition to the general duties imposed upon the mayor of the city charter of the city, the further duty is hereby imposed upon him to devote not less than eight (8) hours a day to the performance of the duties of his office and to the affairs of the city, including a general supervision of all of the street and bridge work, as well as to all the business matters of the city requiring the attention of the mayor.

"Sec. III. The duties of the office of mayor having become so onerous, and the salary of the office being so grossly inadequate for the services that are required by the city, a public emergency is deemed to exist, requiring the passage of this ordinance on the date of its introduction, and, the mayor having requested in writing a suspension of the rules and of the charter requirement that no ordinance be passed on the date of its introduction, the request is granted, and such rules and charter requirement suspended, and it is hereby ordained that this ordinance shall take effect on the date of its introduction and approval by the mayor, and by finally being ratified by the qualified voters of Houston Heights, as required by the charter.

"Passed this 3d day of May, A. D. 1915."

That the fifth paragraph of section 4, art. 7, of the charter reads:

"No ordinances or resolutions shall be passed finally on the date it is introduced, except in case of public emergencies, and then only when requested by the mayor in writing: Provided, that no ordinance or resolution making a grant of any franchise or special privilege shall ever be passed as an emergency measure."

That the ordinance above mentioned was introduced and passed on the same day and at the same meeting, and, while it recites that "a public emergency is deemed to exist," no such emergency in fact existed, but the ordinance was rushed to final passage to prevent deliberate consideration thereof. That the mayor, Marmion, issued a call for an election, and notice thereof was published, which election was held on June 5, 1915. That 488 persons voted at such election. That a large number of those voting, as plaintiffs were informed and believe, and upon such information and belief alleged, to wit, about 100 of such voters, were not qualified to vote at the election, because they did not pay taxes on property in said city, said election being for the purpose of determining the expenditure of money. That section 1 of article 4 of the charter provided:

"In all elections to determine the expenditure of money for (or) the assumption of debt, only those shall be qualified to vote who pay taxes on property in said city, and are legally qualified voters in said city of Houston Heights."

That plaintiffs were unable to make a definite allegation respecting the qualification of said voters, because Marmion had denied them the opportunity to inspect the list of voters at such election. That there are about

1,400 qualified voters in the city, and only 488 voted at the election, and only 288 of such voters voted in favor of the ordinance. That the voters so voting for such ordinance were less than the majority of the voters qualified to vote at said election, by reason whereof the requisite number of votes legally required for the adoption of said ordinance were not cast. That the defendants made canvass of the result of said election and declared that said ordinance had been adopted and ratified thereby.

A temporary injunction was asked restraining the defendants from proceeding further under the ordinance and restraining Marmion from collecting any greater salary than that allowed by the charter of the city, to wit, the sum of $25 per month, and restraining Butzer from issuing vouchers or warrants to him for any greater amount as salary.

No point is made as to other allegations of the petition, and they are therefore not stated.

A temporary writ of injunction was issued, as prayed for, and thereafter the same was dissolved upon a general demurrer interposed by the defendants. From the order of dissolution this appeal is prosecuted.

Appellants urge five propositions in support of their contention that the demurrer was improperly sustained and injunction dissolved, as follows:

"(1) Language found in a legislative enactment must be presumed to have been used advisedly, and with no intent to imply any different meaning from that which the words naturally convey."

"(2) The use of different phraseology in the same act of the Legislature indicates that a different meaning was meant to be attached to the language as changed."

"(3) Provisions in a city charter authorizing the imposition of a tax or other burden on the taxpaying voters should be strictly construed."

"(4) All the conditions precedent provided by a city charter for the imposition of a tax on the property taxpayers must be strictly complied with."

"(5) When a city charter provides that an ordinance increasing the mayor's salary can become effective only 'if a majority of the qualified voters shall vote in favor of said ordinance,' that precludes the ratification of such ordinance by merely a 'majority of votes cast.' "

[1] For the purpose of this opinion, it may be assumed that the first four propositions are correct. The vital issue in the case is presented by the fifth. Upon this phase of the case the rule is thus stated in 15 Cyc. 388:

"When a Constitution or a statute requires that an officer shall be chosen or a question decided by a majority of the votes of a county or other civil division, this does not mean that a majority of all the persons entitled to vote shall actually vote in the affirmative, but that the result shall be determined by a majority of the votes cast. All qualified voters who absent themselves from an election duly called are presumed to assent to the express will of the majority of those voting, unless the law providing for the election otherwise declares. Any other rule would be productive of the greatest inconvenience and ought not to be adopted, unless the legislative will to that effect is clearly expressed. This question has frequently been before the courts under constitutional and statutory provisions authorizing counties, towns, and cities to contract debts for special purposes, by the vote of a specified majority, usually two-thirds, of the qualified voters of such counties, towns, and cities at special elections called for the purpose of submitting propositions to incur such debts; and it has generally been held that the requisite majority of the vote actually cast is sufficient, irrespective of the number of persons entitled to vote."

In McCrary on Elections, at section 208, it is said:

"Where a statute requires a question to be decided or an officer to be chosen by the votes of 'a majority of the voters of a county,' this does not require that a majority of all persons in the county entitled to vote shall actually vote affirmatively, but only that the result shall be decided by a majority of the votes cast, provided always that there is a fair election and an equal opportunity for all to participate. In such a case the only proper test of the number of persons entitled to vote is the result of the election as determined by the ballot box, and the courts will not go outside of that to inquire whether there were other persons entitled to vote who did not vote. The 'voters of the county' referred to by all such statutes are necessarily the voters who vote at the election, since the result in each case must be determined by a vote of the ballots cast, and not by an inquiry as to the number not cast. This doctrine is well settled by the authorities."

While there are cases in which it has been held that an affirmative assent must be given by the requisite majority of voters by going to the polls and voting, yet the great weight of authority supports the text cited. It has been so held in Texas, and, in view of such holding, a review of the conflicting cases from other states would be profitless.

We therefore conclude that the fifth proposition is untenable. Alley v. Denson, 8 Tex. 297; City of Ft. Worth v. Davis, 57 Tex. 225; Werner v. City of Galveston, 72 Tex. 22, 7 S. W. 726, 12 S. W. 159. See, also, Carroll County v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517.

[2] Under the fourth proposition, the contention is advanced that the ordinance was invalid because no public emergency existed authorizing its final passage on the same day it was introduced. In reply to this it is sufficient to say that the ordinance asserts and specifies an emergency. This is conclusive, and is not subject to review by the courts. Day, etc., v. State, 68 Tex. 526, 4 S. W. 865; McLane v. Paschal, 8 Tex. Civ. App. 398, 28 S. W. 711.

[3] It is further urged in support of such proposition that the petition alleges about 100 of those voting at the election were not qualified voters, because they did not pay taxes on property in the city. This contention is based on section 1 of article 4 of the charter, which provides that:

"In all elections to determine the expenditure of money for [or] the assumption of debt, only those shall be qualified to vote who pay taxes on property in said city, and are legally

qualified voters in said City of Houston Heights."

But this provision of the charter is in a section pertaining to the question of the issuance of bonds and voting taxes to pay same, and cannot be extended to furnish the definition of the legal qualifications of voters in an election called to pass upon an increase of the mayor's salary under an entirely different article and section of the charter. An election to determine whether the mayor's salary would be increased is not to be considered within the purview of an "election to determine the expenditure of money or the assumption of debt." Such language manifestly refers to the issuance of bonds, and imposition of taxes covered by said section 1 of article 4, wherein the language is used.

The charter of the city of Houston Heights will be found in Local and Special Laws 32d Leg. (Reg. Sess.) p. 102.

Affirmed.

---

⬅═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes