SHAW et al. v. LINDSLEY. (No. 7857.)

(Court of Civil Appeals of Texas. Dallas. April 28, 1917. Rehearing Denied May 26, 1917.)

1. MUNICIPAL CORPORATIONS ⟨⟩46—AMENDMENT OF CHARTER — CONSTITUTION — "MAJORITY VOTE OF THE QUALIFIED VOTERS OF THE CITY."

Const. art. 11, § 5, provides that cities having more than 5,000 inhabitants may, by a majority vote of the qualified voters of the city, at an election held for that purpose, adopt or amend their charters. *Held*, that the phrase, "majority vote of the qualified voters of the city," means a majority vote of the votes polled at the election, though the number of qualified voters in the city can be shown by the tax collector's records showing the number of poll tax receipts and exemption certificates issued.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 123–125.

For other definitions, see Words and Phrases, First and Second Series, Majority.]

2. MUNICIPAL CORPORATIONS ⟨⟩46—AMENDMENTS OF CHARTER — HOME-RULE BILL — FORM OF BALLOT.

Under Rev. St. art. 2971, providing that, in voting on amendments to the city charter, the form of the proposition shall be prescribed by the city authorities, where the official ballot at an election submitting proposed changes to the existing charter of a city under the Home-Rule Bill had printed on it, following the nine amendments, propositions relating to proposed ordinances granting franchises, the motive of the city council in placing such matter on the ticket being to ascertain the will of the people in reference thereto, the printing of such matter on the ballot was not illegal, the people having had the opportunity before the election to understand what was contained in the ballot, article 3097, providing that no official ballot shall have on it any printed matter, except what is authorized by law, etc., having no application to the ballots used in such election.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 123–125.]

3. MUNICIPAL CORPORATIONS ⟨⟩46—ELECTION UNDER HOME-RULE AMENDMENT—MAJORITY IN FAVOR OF EACH AMENDMENT—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1096b, section 2 of the Home-Rule Amendment, requiring a majority vote to carry proposed charter amendments in cities of over 5,000 inhabitants, where, at an election wherein proposed changes to the existing charter of a city were submitted under the Home-Rule Bill, the first amendment proposed received 6,208 votes for it, while 6,116 votes were against it, and the fifth amendment received 6,157 votes for it and 6,047 votes against it, such amendments were properly declared carried, though there were 12,721 votes cast at the election, since each amendment is separate, and the result as to each must be determined from the votes cast for or against it.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 123–125.]

4. MUNICIPAL CORPORATIONS ⟨⟩46—CONTEST —CHARTER AMENDMENTS.

Where a copy of the ballot was mailed to each voter 30 days before an election in a city wherein proposed charter changes under the Home-Rule Amendment were determined, it could not be said, after the election, in suit to contest it, that the voters did not act with a clear understanding of the scope and character of each amendment.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 123–125.]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit to contest an election by W. A. Shaw and others against Henry D. Lindsley. From a judgment for defendant, contestants appeal. Affirmed.

K. R. Craig, Lawther, Pope & Mays, W. W. Nelms, Crane & Crane, and S. A. Charlton, all of Dallas, for appellants. C. F. O'Donnell, J. E. Cockrell, R. V. Davidson, and C. F. Greenwood, all of Dallas, for appellee.

RAINEY, C. J. The appellants, as contestants below, brought this suit to contest an election held in the city of Dallas, Tex., on April 4, 1916, in which certain proposed changes to the existing charter of the city of Dallas were submitted under the Home-Rule Bill (Laws 1913, p. 307). The said election was held on the same day as a general election in said city, wherein a president and members of a school board were to be selected. After notice of contest, given in accordance with law, in due time this suit was instituted in the court below to contest such charter election, on two grounds—the propositions submitted failed to secure the number of votes necessary to their adoption, and the ballot was improper and illegal in several respects, and the officers of the election should not have counted the votes cast upon said illegal and outlawed ballots. There were nine proposed amendments, and the proper city officials canvassed the returns, and declared all such propositions carried except the fourth. The contestee below filed answer in said contest, questioning the jurisdiction of the court, and asserting the valid-

ity of the election and the declared result in all things. The case was tried before the court, and judgment rendered for the contestee, sustaining the declared result and the election in all things, and overruling all demurrers of both sides, and holding the court had jurisdiction, and contestants appealed the cause to this court.

The first assignment of error is as follows:

"The district court erred by not sustaining the contestants' contest to, and holding invalid and setting aside the declared result of, the election as to all the charter amendments submitted at the election under the propositions numbered, respectively, first, second, third, fifth, sixth, seventh, eighth, and ninth, on the official ballot, on the ground that no one of said proposed amendments received in favor of its adoption the vote of a majority of the qualified voters of the city of Dallas, as prescribed by section 5 of article 11 of the Constitution of the state of Texas; that fact being established and not controverted."

Which assignment is submitted as a proposition, under which we are called upon to construe the following language, "by a majority vote of the qualified voters of said city, at an election held for that purpose," found in article 11, § 5, Constitution of Texas, which reads:

"Cities having more than five thousand (5,000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of this state. * * *"

It was agreed on the trial that the records of the county tax collector's office for Dallas county, Tex., would show that between October 1, 1915, and January 31, 1916, there had been issued, in poll tax receipts and exemption certificates 20,467 to persons claiming to be resident citizens of the city of Dallas, Dallas county, Tex., during the year 1915, and up to January 31, 1916; and that before the 1st of April, 1916, the county collector of taxes delivered to the board of the city of Dallas charged with furnishing election supplies separate certified lists of the citizens of each precinct who had paid their poll tax or received their certificate of exemption between the 1st day of October and 1st day of February preceding, and in the manner and form prescribed by article 2961 of Revised Civil Statutes of Texas, and in all respects complied with article 2961, and that the foregoing may be used in evidence in lieu of records of said office. It is further agreed by said counsel that the poll lists used in the April election in 1916, which is mentioned and described in plaintiff's petition, will show that there were deposited in the ballot boxes on said day, by persons qualified to vote therein, 12,721 ballots. The official returns show that all of said amendments, except the fourth, were carried by a majority of the votes cast in the election. We are of the opinion that a majority of the votes were cast for the amendments, as shown by the official returns, and the amendments became part of the charter of said city.

[1] The authorities of other jurisdictions are in conflict as to the proper construction to be placed on the language, "majority vote of the qualified voters of the city," but we think the great weight of authority, those of our courts of this state being among them, is with the majority, that to carry a proposition a majority vote of the votes polled is all that is necessary.

Counsel for both parties have cited quite an array of authorities, but we think all that is necessary for us is to cite a few which are in accord with our views. Alley v. Denson, 8 Tex. 297; Werner v. City of Galveston, 72 Tex. 22, 7 S. W. 726, 12 S. W. 159; School Dist. v. McElroy, 103 Tex. 64, 123 S. W. 117; Bradshaw v. Marmion, 188 S. W. 973; Ft. Worth v. Davis, 57 Tex. 225; Carroll County v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517; 15 Cyc. § 388; McCreary on Elections, § 208; Day v. Austin, 22 S. W. 757; Dillon, Mun. Cor. vol. 1, § 383 (5th Ed.).

In Werner v. City of Galveston, supra, where the city by an act provided that "a tax shall be levied if two-thirds of the taxpayers voting shall vote in favor thereof," and election was held thereunder, and a majority voting in favor of a school tax at an election therefor, said act was attacked as being "unconstitutional, because * * * the constitution ordains that the tax may be levied 'if * * * two-thirds of the taxpayers of such city or town shall vote for such tax,'" it was held, Mr. Justice Gaines speaking for the court, that such election was valid.

In Bradshaw v. Marmion, supra, where similar language as here used was construed, it was held that the election was valid, quoting Cyc. and McCreary, supra, and further:

"While there are cases in which it has been held that an affirmative assent must be given by the requisite majority of voters by going to the polls and voting, yet the great weight of authority supports the text cited. It has been so held in Texas, and, in view of such holding, a review of the conflicting cases from other states would be profitless."

It is insisted by appellant that by the tax collector's records it can be shown the number of poll tax receipts and exemption certificates issued, thereby showing the number of qualified voters in the city of Dallas, and that when this can be done a different construction should be placed on the language considered, and authorities are cited from other states where registration of voters is provided for when such construction as contended for is placed upon said language.

In Carroll County v. Smith, supra, where the United States Supreme Court passed upon a case from Mississippi, where registration existed, registration of voters is discussed and combated, and it is held:

"In our opinion, the Constitution of Mississippi did not mean, in the clause under consideration, to introduce any new rule. The assent of two-thirds of the qualified voters of the county, at an election lawfully held for that purpose, to a proposed issue of municipal bonds, intended by that instrument, meant the vote of two-thirds of the qualified voters present and voting at such election in its favor, as determined by the official return of the result. The words 'qualified voters,' as used in the Constitution, must be taken to mean not those qualified and entitled to vote, but those qualified and actually voting. In that connection a voter is one who votes, not one who, although qualified to vote, does not vote."

Believing the foregoing views are sound, we overrule the first assignment of error.

Appellant's second assignment of error is:

"The district court erred by not sustaining contestants' contest to and holding invalid and setting aside the declared result of the election as to all the charter amendments submitted under propositions numbered, respectively, first to ninth, inclusive, on the official ballot, on the ground that the official ballot containing said propositions, which was used and which was the only ballot used by the voters at said election in voting on said propositions, had and carried on its face printed matter not authorized by law."

[2] On the official ballot furnished the voters, and used at the election, was printed thereon, following the nine amendments to the city charter, several propositions relating to proposed ordinances granting franchises, one to the street railway company consolidated, and the other for the grant of a franchise to the electric light company; also a proposition for the consolidation of the street railway companies. We apprehend the motive that actuated the city council in placing said matter upon the ticket was to ascertain the will of the people in reference to same, so if their adoption came before the council they could act in relation thereto and in accord with the will of the people. No other end could possibly be subserved, as the printing of said matter on the ballots had no binding force on the council or people.

It is insisted by appellant that:

"The printed matter appearing on said ballot with reference to the proposed franchises was placed thereon with intent to deceive and defraud the voters into voting for the charter amendment embraced in the first proposition, for that the board of city commissioners did not intend to grant the franchises proposed, but to use the authority, given by the adoption of first proposition, in the grant of entirely different franchises, as shown by subsequent events of which this court has judicial knowledge."

The form of the ballot was prepared and presented by the city authorities, and a copy of same was mailed to each voter residing in Dallas before the day of election, and within the time prescribed by law. This being so, and while the printing of said matter on the ballots served no legitimate purpose, we are unable to say that it was fraudulent and illegal. The people had the opportunity, before the election, to examine and understand what was contained therein, and were evidently not misled by the ballot. The law

provides, in voting on amendments to the city charter, that the form in which such proposition shall be voted on shall be prescribed by the city authorities. R. S. art. 2971. The different amendments or propositions were orderly arranged on the ballot, and stated in intelligent terms, with no confusion therein, and the printed matter complained of, as we understand it, did not affect the result of the vote on said amendments. Under the circumstances of this case, the law does not hold that the ballots should not be counted. We therefore hold that said ballots were valid and were properly counted.

Article 3097, R. S., provides:

"No official ballot, either for a primary or general election, shall have on it any symbol or device or any printed matter, except that which is authorized by law; and no ballot cast in violation of this article shall be counted for any candidate," etc.

This article has no application to the ballots used in this election, but applies only to ballots cast in primary and general elections when candidates are to be voted for, and the reason for applying it to this case is not the same as when candidates are balloted for. Wallis v. Williams, 101 Tex. 395, 108 S. W. 153; Durham v. Rogers, 48 Tex. Civ. App. 232, 106 S. W. 906; Walker v. Mobley, 105 S. W. 61; Algelt v. Callaghan, 144 S. W. 1166.

The third assignment of error is:

"The district court erred by not sustaining contestants' contest to, and holding invalid and setting aside the declared result of, the election as to the charter amendments submitted at the election under propositions numbered, respectively, first and fifth on the official ballot, on the ground that neither of said propositions received in favor of its adoption the vote of a majority of the qualified voters voting at said election."

The first amendment proposed received 6,208 votes for it, and against it was 6,116 votes, this being a majority of the votes cast on said proposition. On the fifth proposition there were 6,157 votes cast for and 6,047 cast against said proposition, being a majority vote for said fifth proposition. The proper city official counted the election returns, and declared the first and fifth propositions duly carried.

[3] Under article 1096b, Vernon's Sayles' Civ. Stats., which is section 2 of the act of the Legislature of 1913, c. 147, known as the Home-Rule Amendment, as we construe it, said first and fifth propositions having received a majority of the votes cast on said propositions, they were properly declared carried, although there were 12,721 votes cast at said election. We conclude from the authorities that each amendment is separate, and the result as to each is to be determined from the votes cast for or against it.

[4] We have considered the fourth and fifth assignments of error, which, in effect, insist that propositions first and second, as framed and submitted, were not in such terms as to give the voters a clear idea of the scope and character of the proposed amendments. A

copy of the ballot having been mailed to each voter 30 days before election, it was for the purpose of giving to the voter an opportunity to study and analyze the amendments, and we conclude that it cannot now be said that the voters did not act with a clear understanding of the meaning of each proposition. Such a plea cannot now be urged for setting aside the election.

The judgment is affirmed.