**J. J. RICHTER et al., Appellants,**

v.

**J. C. MARTIN, Jr., Mayor of the City of Laredo, Appellee.**

No. 13586.

Court of Civil Appeals of Texas.

San Antonio.

April 13, 1960.

Rehearing Denied June 1, 1960.

John Fitzgerald Ryan, Laredo, for appellants.

Gerald Weatherly, William W. Allen, Philip A. Kazen, Laredo, for appellee.

POPE, Justice.

This is an election contest. The case concerns the constitutionality of Section 5, Article 1269*l*–3, known as the Urban Renewal Act. Section 5 limits voting privileges to "qualified voters residing in said city, owning taxable property within the boundaries thereof, who have duly rendered the same for taxation." Contestants, J. J. Richter et al., attack the validity of an election in Laredo because only property owners were permitted to vote at an election. The trial court upheld the election. The case was submitted to the court and tried on pleadings and agreements without objections, and the parties have joined issue upon this controlling constitutional matter. After the appeal was perfected contestees filed a motion which asserted that contestants had no justiciable interest. Apart from its tardy filing, we overrule the motion. DeShazo v. Webb, 131 Tex. 108, 113 S.W.2d 519.

The Laredo City Council, in accord with Section 5, Art. 1269*l*–3, prepared a resolution [1] finding a necessity for the adoption of the Urban Renewal Act. City then conducted an election on June 27, 1959, so that the voters could determine whether

1. "Resolution Making Certain Findings, Determinations, and Elections Under and Pursuant to the Urban Renewal Law of Texas

"Be It Resolved By the City Council of the City of Laredo, Texas as follows:

"Section 1. It is hereby found and determined that one or more slum or blighted areas exists in the City of Laredo.

"Section 2. It is hereby further found and determined that the rehabilitation, conservation, or slum clearance and redevelopment, or a combination thereof, of such slum or blighted area or areas, is necessary in the interest of public health, safety, morals or· welfare of the residents of said City.

"Section 3. It is hereby further determined that the City of Laredo shall exercise the powers granted to the City

by the Urban Renewal Law of the State of Texas, except the Urban Renewal Project Powers as defined in said Urban Renewal Law.

"Section 4. It is hereby further determined to be necessary and in the public interest that the City of Laredo elect. and accordingly, the City hereby elects to have said Urban Renewal Project Powers exercised by the Urban Renewal Agency of the City of Laredo, which Agency is created by said Urban Renewal Law.

"Section 5. The findings, determinations, and elections herein made are made in accordance with the various terms used herein are used in the same sense as used or defined in said Urban Renewal Law."

the City Council should adopt the resolution. At the election, 2,072 persons voted against the proposal and 1,855 persons voted for it. Contestants urged that the resolution was submitted to the wrong electorate, since the ordinance which ordered the election limited the voting to "legally qualified voters residing within the corporate limits of the City of Laredo, owning taxable property within said corporate limits, who have duly rendered such property for taxation." It was agreed that the election notices and widespread publicity limited the election to property owners. Contestants urged that under Section 2, Article 6 of the Constitution, Vernon's Ann.St., all qualified voters, without regard to property ownership, should have been permitted to vote and that Sections 3 and 3a of Article 6 are inapplicable.[2]

■■ In determining the eligibility of the voters, constitutional voting qualifications control over statutes and ordinances. Cameron v. Connally, 117 Tex. 159, 299 S.W. 221; McCutcheon v. Wozencraft, 116 Tex. 440, 294 S.W. 1105. An election on the issuance of bonds, the lending of credit, expending money, or assuming a debt, may constitutionally be limited to voters who own property and who have duly rendered it for taxation. Art. 6, § 3a, Tex. Const. But an election to determine a matter of policy is open to all qualified voters within the voting district. A decision whether an election is for the one

purpose or the other is sometimes more difficult than the mere statement of the general rules. In City of Richmond v. Allred, 123 Tex. 365, 71 S.W.2d 233, property ownership as a voting qualification was approved even though the election was to determine whether the City should issue revenue bonds for the purchase of a utility system.

■ An election which does not concern the expenditure of money is open to all qualified voters. In King v. Carlton Independent School District, 156 Tex. 365, 295 S.W.2d 408, 411, qualified voters, without regard to property ownership, were permitted to vote on the adoption of a law which empowered trustees of a school district to levy and collect maintenance taxes and to issue bonds. The actual levy and collection, however, could not occur until the matter was directly submitted to a vote of the property taxpaying qualified voters of the district whose property had been duly rendered for taxation. The Supreme Court held that the initial election on whether the act itself should be adopted should be submitted to the qualified voters, and not limited to those owning property. The Court said: "Since no taxes can be levied, money expended, or bonds issued based alone upon the results of an election to adopt the Act, it is our conclusion that Section 3 of the Act does not offend against the provisions of the section of the Constitution under consideration." The fact

2. "Sec. 3. All qualified electors of the State, as herein described, who shall have resided for six months immediately preceding an election, within the limits of any city or corporate town, shall have the right to vote for Mayor and all other elective officers; but in all elections to determine expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city or incorporated town; provided, that no poll tax for the payment of debts thus incurred, shall be levied upon the persons debarred from voting in relation thereto."

"Sec. 3a. When an election is held by any county, or any number of counties, or any political sub-division of the State,

or any political sub-division of a county, or any defined district now or hereafter to be described and defined within the State and which may or may not include towns, villages or municipal corporations, or any city, town or village, for the purpose of issuing bonds or otherwise lending credit, or expending money or assuming any debt, only qualified electors who own taxable property in the State, county, political subdivision, district, city, town or village where such election is held, and who have duly rendered the same for taxation, shall be qualified to vote and all electors shall vote in the election precinct of their residence. Added Nov. 8, 1932."

that a policy, once adopted, will cost money is not the controlling test. This is illustrated by Taxpayers' Ass'n of Harris County v. City of Houston, 129 Tex. 627, 105 S.W.2d 655. The City of Houston submitted to the qualified voters, without regard to property ownership, the matter of the adoption of a minimum-wage law for certain city employees. A vote for the adoption necessarily would entail the expenditure of money, but the Court distinguished City of Richmond v. Allred, saying that it involved principally a matter of public policy. See Bradshaw v. Marmion, Tex.Civ.App., 188 S.W. 973, 975. Again, in Moreland v. City of San Antonio, Tex.Civ.App., 116 S.W.2d 823, 825, the City submitted to all qualified voters the proposition of amending the City Charter to authorize an advertising tax not to exceed five cents on every $100.00 valuation. The Court treated this as an enlargement of the municipal powers to permit advertising and held that it was not "for the purpose of * * * expending money." The Court reasoned that the City already possessed the power to tax but did not possess the power to advertise. Hence, the issue was whether the City powers should be enlarged, and the taxation was only incidentally involved. From these cases, and particularly the statements in Taxpayers' Ass'n of Harris County v. City of Houston, supra, the line between the two electorates seems to rest upon a decision whether the election involved directly the expenditure of money or whether the election principally concerned a matter of public policy.

The Laredo Resolution upon which the voters were expressing their wishes, does not contain anything which could be called a vote for a direct expenditure of money. On the other hand, it does show that it concerned matters of general policy. Should the City of Laredo undertake the rehabilitation, conservation, or slum clearance and redevelopment of slum or blighted areas? Should the voters vest in the City the powers granted by the Urban Re-

newal Law, with some exceptions? Should the Project Powers be exercised by an Urban Renewal Agency? The adoption of these matters may or may not eventually entail expenditures of money within the meaning of Secs. 3 and 3a, Art. 6 of the Constitution, but before decisions about expenditures can even be reached, the City first must possess powers it does not have until after an election approving the resolution. It was the purpose of the election to determine whether the City should possess these additional powers, and those are policy matters. See Davis v. City of Lubbock, Tex., 326 S.W.2d 699, 701.

Contestees seek to uphold the election which was limited to property owners because Section 9 of the Urban Renewal Law enumerates many powers, the exercise of which will require the expenditure of funds. However, Section 9(j) of the Act expressly provides that "no taxes or assessments shall be levied under authority or for the purposes of this Act unless and until such levy shall first have been submitted to a vote of the property-owning taxpayers of said city * * *." Section 15(b) vests in the City Council the power to issue general obligation bonds, and Section 15(d) empowers the Urban Renewal Agency to issue bonds to finance the project. These powers require a second election, and they, of course, will be limited to property-owning taxpayers of the City, under the Constitution as well as the statute.

▉ That part of Section 5 of the Urban Renewal Law, with respect to the election on the initial policy matter of adopting the resolution, which limits the voting to "qualified voters residing in said city, owning taxable property within the boundaries thereof, who have duly rendered the same for taxation," is unconstitutional. But the whole act does not fall for the reasons discussed in King v. Carlton Independent School District, 156 Tex. 365, 295 S.W.2d 408, 412. All the language just quoted, following the words "qualified voters residing in said city" is in conflict with the

provisions of Article 6, Section 2, of the Constitution, and should be stricken from the Act.

Inasmuch as the election was closed to voters who were "qualified", the contest should have been sustained. Judgment is rendered in favor of contestants that the election was void.

### On Motion for Rehearing

In our original opinion we stated that Section 15(d), Article 1269*l*-3, Vernon's Ann.Tex.Stats., empowered the Agency to issue bonds after a prior election. Actually, the Act authorizes the Agency to "issue bonds from time to time in its discretion to finance the undertaking of any urban renewal project * * *." The bonds "shall not be subject to the provisions of any other law relating to the authorization, issuance or sale of bonds." They "shall be authorized by resolution or ordinance of the governing body of the urban renewal agency * * *." The Act itself, therefore, does not require an election prior to the Agency's issuance of revenue bonds.

City of Dayton v. Allred, 123 Tex. 60, 68 S.W.2d 172, 177, held that Article 1112, Vernon's Ann.Tex.Stats., did not require an election prior to the issuance of revenue bonds for the purchase money of a utility system, but when that same City undertook to encumber the income from another City utility system, the statute was not applicable and an election was necessary. When no constitutional provision is violated, a statute may excuse an election. Brazos River Conservation and Reclamation Dist. v. McCraw, 126 Tex. 506, 91 S.W.2d 665; Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S.W.2d 629; City of Houston v. Allred, 123 Tex. 334, 71 S.W.2d 251; City of Dayton v. Allred, 123 Tex. 60, 68 S.W.2d 172; McCann v. Akard, Tex.Com.App., 68 S.W. 2d 1033.

City of Richmond v. Allred, 123 Tex. 365, 71 S.W.2d 233, concerned the issuance of bonds to purchase an existing water plant, but, as in City of Dayton v. Allred, supra, the bonds were to be secured by a lien and pledge of revenues from the city's entire water system, and Article 1112 was not applicable to excuse an election. The case, however, goes further and holds that the issuance of such bonds is for the determination of the expenditure of money within the meaning of Sections 3 and 3a, Article 6 of the Constitution, which required an election by the qualified voters owning taxable property, who had rendered the property for taxation.

The reason, however, that City of Richmond v. Allred does not control this case is stated by the Supreme Court in Taxpayers' Ass'n of Harris County v. City of Houston, 129 Tex. 627, 105 S.W.2d 655, 659: "We think that the holding in the City of Richmond Case, supra, cannot be said to support the contentions of the association et al. here. In other words, we think there is a vast difference between voting on revenue bonds to raise funds, the proceeds of which are to be expended to purchase a municipal water plant, and the mere voting of an ordinance for fixing minimum wages for city officers and employees. The first-mentioned enterprise involved directly the expenditure of money. The second involved principally a matter of public policy." The direct question put to the voters in the Laredo election was whether they favored or were against the adoption of the resolution stated in the footnote. It did not concern a direct expenditure of money.

It should be further observed that this action is an election contest which we conclude should have been upheld. We express no opinion with respect to the effect of an urban renewal election which is not contested.

The motion for rehearing is overruled.