J. C. MARTIN, JR., ET AL V. J. J. RICHTER ET AL.

No. A-7937. Decided December 14, 1960.
(342 S.W. 2d Series 1)

324

*William W. Allen, Frank Y. Hill, Phillip A. Kazen* and *Gerald Weatherly,* all of Laredo, for petitioners and intervenors.

The Court of Civil Appeals reversibly erred in holding that that part of Section 5 of the Urban Renewal Law (Art. 1269L-3, Sec. 5, Vernon's Texas Civil Statutes) with respect to the election on the initial policy matter of adopting the resolution, which limits the voting to qualified voters residing in said city, owning taxable property within the boundaries thereof, who have rendered the same for taxation, is unconstitutional. City of Richmond v. Allred, 123 Texas 365, 71 S.W. 2d 233; State ex rel Lukovich v. Johnston, 150 Texas 174, 238 S.W. 2d 957; Soliz v. Martinez, 264 S.W. 2d 956.

*John Fitzgerald Ryan,* of Laredo, for respondents.

MR. JUSTICE SMITH delivered the opinion of the Court.

This case involves a contest of an election held in the City

of Laredo, Webb County, Texas, pursuant to a resolution adopted by the city on September 2, 1958 and an ordinance subsequently issued by the city calling a special election in the City of Laredo, Texas, pursuant to Sections 5 and 16(a) of Article 1269L-3, Vernon's Annotated Civil Statutes, known as the Urban Renewal Law, to determine whether or not the city should adopt the Urban Renewal Law of Texas. The election was held on January 27, 1959. At the election 2,072 persons voted against the proposal and 1,855 persons voted for it. Thus, the voters refused to adopt the provisions of the Urban Renewal Act.

The contestants-respondents filed this suit, and alleged specifically in their second amended statement of grounds of contest: (1) that Section 5, Article 1269L-3, supra, is unconstitutional and void in its entirety, for the reason that such section restricts the privilege of suffage to qualified voters residing in the city owning taxable property within the boundaries thereof, who have duly rendered the same for taxation, and (2) in the alternative, it was alleged, that if Section 5 is not void in its entirety, then that portion of the section which discriminates against all qualified nonproperty owning voters within the city is void, and, therefore, the election held pursuant to the order of election is void. It was further pleaded, in the alternative, as a ground of contest, that a material number of persons voted against the adoption of the Urban Renewal Act who were not qualified to vote in such election. The disqualified voters were divided into three general classifications: (1) those who were not "legally qualified to vote in such election for the reason that they had not duly rendered taxable property situated within the city for taxation," (2) those who did not possess "a current poll tax receipt as required by law nor had they procured a certificate of exemption, in order to qualify them to cast a vote in such election," and (3) those who "although they owned taxable property within the City of Laredo, such property was not rendered by them for taxation until after the period of time affixed by law for such rendition had expired in contravention of Article 5.03, Texas Election Code (as amended)." The pleadings alleged that if such illegal votes had not been counted, the election to adopt the Urban Renewal Act would have carried.

On October 13, 1959, the trial court, without the intervention of a jury, and after five pre-trial hearings, and after considering the pleadings and the stipulations of the parties, dismissed the contest and entered judgment against the contestants-respondents.

On appeal to the Court of Civil Appeals at San Antonio, Texas, that court sustained the contention that the question was submitted to the wrong electorate and rendered its judgment that the election was void. The court did not pass upon the contestants-respondents' point attacking the qualifications of a number of voters who voted against the adoption of the Urban Renewal Act. 337 S.W. 2d 134.

This court granted the petition for writ of error on the point assigning error of the Court of Civil Appeals in holding that the statute was unconstitutional and in declaring the election void.

Petitioners assert that the Supreme Court has jurisdiction under Articles 1728 and 1821, Vernon's Annotated Civil Statutes. We have concluded that the jurisdiction of the Court of Civil Appeals is not final and that this court has jurisdiction to determine the question presented. We declined to take jurisdiction of the case of George B. Parr et al. v. Santiago Cantu, et al., 161 Texas 296, 340 S.W. 2d 481, opinion delivered November 30, 1960, solely for the reason that the case involved contests of party nominations, and, therefore, the jurisdiction of the court was denied by Article 13.30, Vernon's Texas Election Code. Obviously, Article 13.30, supra, has application only in contests for nominations growing out of Primary Elections. It is true that Section 12 of Article 13.30, uses the word "Act," but it is clear that "this Act" refers to Article 13.30 and not to the entire Election Code.

■ We have jurisdiction under Section 3 of Article V of the Texas Constitution and Articles 1728 and 1821, supra. The Constitution provides that the appellate jurisdiction of the Supreme Court shall extend to questions where a statute has been held void by the Court of Civil Appeals. The general jurisdiction of the Supreme Court is prescribed by Article 1728, supra, in cases "involving the construction or validity of statutes necessary to a determination of the case." By the provisions of Article 1821, supra, jurisdiction is made final in "all cases of contested elections of every character" except those in which the validity of a statute is questioned by the decision of the Court of Civil Appeals. See George B. Parr et al. v. Santiago Cantu et al., supra.

Since we have jurisdiction, we proceed to a decision of the question presented. The judgment of the Court of Civil Appeals

is reversed and remanded to that court for the reasons now to be stated.

A determination of the question of whether the Act is unconstitutional turns primarily on whether the election necessarily involved the expenditure of money or whether the election only called for the expression of the voters on a matter of public policy. In passing upon the question, it is well to bear in mind that the general purpose of the Urban Renewal Law is to provide for the clearance of slum and blighted areas in cities and the redevelopment of the areas by private enterprise under restrictions designed to carry out the plan of renewal and to prevent recurrence of the slum conditions. This general purpose was expressed by Mr. Justice Greenhill, writing for the court, in the recent case of Davis v. City of Lubbock, 160 Texas 38, 326 S.W. 2d 699. Necessarily, such purpose, if adopted, will require the expenditure of money or the assumption of debt. Section 3 of Article VI of the Texas Constitution provides that:

"All qualified electors * * * shall have the right to vote for Mayor and all other elective officers; *but in all elections to determine the expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city.* * * *" [Emphasis added.]

Section 3a provides:

"When an election is held by any county * * * or political subdivision * * * which may or may not include * * * municipal corporations, or any city * * * for the purpose of issuing bonds or otherwise lending credit, or expending money or assuming any debt, only *qualified electors who own taxable property * * * where such election is held, and have duly rendered the same for taxation,* shall be qualified to vote * * *" [Emphasis added.]

Respondent's position requires us to also consider Section 2 of Article VI of the Texas Constitution, which reads:

"Every person subject to none of the foregoing disqualifications (minors, lunatics, idiots, paupers, and felons) who shall have attained the age of 21 and who shall be a citizen * * * and who shall have resided in the State shall be deemed a qualified elector * * *"

The adoption of the provisions of the Urban Renewal Law invests cities and renewal agencies with certain powers. The

right to exercise such powers must be first granted by a vote of the properly qualified persons. The Urban Renewal Law, Section 5, provides that no city shall "exercise any of the powers" conferred by the Act until it has adopted a resolution that slums exist in the city and that slum clearance is necessary. The City of Laredo prepared a resolution wherein it made certain findings, determinations, and elections under and pursuant to the Act. The resolution is fully set out in the opinion of the Court of Civil Appeals, and will not be repeated here. Section 5 further provides that before finally adopting such resolution, the city may call an election on the matter; or it shall call an election if presented with a petition to hold it. In the present case, the city passed a resolution and entered an ordinance calling for the election. No question is raised here of any irregularity in the proceedings leading up to the election. Section 5 contains the following pertinent provision:

"Notwithstanding any other provisions of this Act, no power granted by this Act shall be exercised by a city until an election shall have been held. * * * *Only qualified voters* * * * *owning taxable property within the boundaries thereof, who have duly* rendered the same for *taxation,* shall be entitled to vote at such election. * * *" [Emphasis added.]

Under Section 9 of the Urban Renewal Law, if authority is granted by a majority vote of the qualified electorate, the city or renewal agency may exercise such powers as the making of contracts, installing, constructing or reconstructing streets, parks, and other improvements, acquiring real estate, borrowing money, redeeming bonds, et cetera.

Section 15a authorizes the cities or urban renewal agencies to issue general obligation bonds, levy and collect taxes and exercise the other powers set out in Section 9. No further election is needed to issue general obligation bonds. However, subsection 9j says in regard to taxes:

"Provided, however, that no taxes or assessments shall be levied * * * unless and until such levy shall have been submitted to a vote of the property-owning taxpayers of said city. * * *"

Section 15d provides:

"An urban renewal agency created by Section 16 hereof, shall, in addition to all other powers which may be vested in it, have power to issue bonds from time to time in its discretion

to finance the undertaking of any urban renewal project under this Act, including, without limiting the generality thereof, the payment of principal and interest upon any advances for surveys and plans, and shall also have power to issue refunding bonds for the payment or retirement of such bonds previously issued by it. * * *"

The Court of Civil Appeals in its original opinion held that Section 15d empowered the agency to issue bonds after a prior election, meaning, of course, that a second election must be held. However, on motion for rehearing, the court changed its holding in regard to Section 15d and correctly held that "actually the Act authorizes the agency to 'issue bonds from time to time in its discretion to finance the undertaking of any urban renewal project * * *' The bonds 'shall not be subject to the provisions of any other law relating to the authorization, issuance or sale of bonds.' They 'shall be authorized by resolution or ordinance of the governing body of the urban renewal agency.' * * *"

Respondents contend that the Urban Renewal Law may be likened unto a Home Rule Charter Election under the provisions of Article 1165 et seq., Vernon's Annotated Civil Statutes; that under such statutes, after the new charter has been adopted or amended, the city may then exercise any one of a number of powers enumerated in Article 1175, including the levy of taxes and a variety of enterprises involving the expenditure of money; but that in such case, as well as under the Urban Renewal Law, the initial election is open to all qualified voters as provided in Section 2, Article VI of our Constitution, the contention being that in "an election which adopts, approves or ratifies a charter, scheme or project, even though the enterprise may involve the eventual expenditure of money, assumption of debt, or lending of credit," every person qualified under Section 2, Article VI, supra, has the right to vote at said election.

■ The respondents further contend that "The approval by the voters of the resolution concerning the necessity for urban renewal is made a prerequisite to the exercise of the powers granted by the Act, but the exercise of any and all the powers does not necessarily follow from the approval of the adoption of the resolution at the polls"; that the voter has nothing to say about the "expenditure of money or assumption of debt other than that he approves or disapproves a program which may or may not involve these things." The Court of Civil Appeals has sustained the theory that no specific question of indebtedness or expenditure was presented to the electorate at

said election, and that the election was concerned only with matters of general policy. With this we cannot agree. The election here involved did not merely consummate the corporate existence of the Urban Renewal Agency. As a direct result of the election, which was held as required by Section 5 of the Urban Renewal Law, the Urban Renewal Agency of the City of Laredo was authorized to make an expenditure of money, issue revenue bonds, or incur financial obligations. Since the Urban Renewal Act expressly accords an Urban Renewal Agency the power to expend money and issue bonds, the conclusion is inescapable that the provision in the Act limiting the election as it does to property owners is not in violation of the parts of the Constitution under consideration. The power of the Agency to borrow and spend money has been given as the result of the election now under consideration. Of course, in this particular case, until the election contest has been finally determined, the powers granted under Section 9 of the Urban Renewal Law have been withheld. Be that is it may, there is a specific provision in the Act providing that the electorate must be property owners as provided by the Constitution. The reason for this restrictive provision is apparent when it is realized that the Urban Renewal Agency receives all of its powers from the Act and the election. Clearly, it was the intention of the legislature to bestow upon the city or the Urban Renewal Agency all the powers nacessary to carry out and effectuate the purposes of the Act, including all of the powers specifically enumerated in Section 9 of the Act. The legislature, therefore, provided that the decision as to whether or not such powers shall be granted must necessarily rest only with qualified voters owning taxable property within the boundaries of the city. The State of Arkansas, at various times, has authorized by statutory enactment the creation, within cities, of housing authorities, the adoption of plans for the redevelopment of blighted areas, and the adoption of Urban Renewal Plans. Although the legislative enactments were at different times, yet the three have been integrated and appear as one Act. The Act at no place provides, as does the Texas Act, for an election. This, perhaps, accounts for the provision in Section 19-3069 "that * * * bonds issued under the provisions of this Act * * * shall be payable solely from the revenues * * * and such bonds shall not in any event constitute an indebtedness of such county or municipality within the meaning of the constitutional provisions or limitations and it *shall be plainly stated on the face of each bond that the same has been issued under the provisions of this Act* and that it does not constitute any indebtedness of such county or municipality within any constitutional or statutory limitation." [Emphasis

added.] See Articles 19-3063.1 and 19-3063.2, et seq., Chapter 30, Volume 2, Arkansas Statutes (1947) annotated; Hogue v. Housing Authority of North Little Rock et al., 201 Ark. 263, 144 S.W. 2d 49 (1940).

In our case, the election enabling an Urban Renewal Agency to issue bonds and incur financial obligations must be limited to property owners, as provided in our Constitution. The case of the City of Richmond et al., v. Allred, Attorney General, 123 Texas 365, 71 S.W. 2d 233, although it does not involve Urban Renewal Revenue Bonds, supports our holding here that the attack made on the constitutionality of the Act is without foundation. In the Richmond case the relators sought permission to file a petition for the issuance of a writ of mandamus to compel the Attorney General of Texas to approve certain revenue bonds proposed to be issued by the City of Richmond. The Attorney General had refused to approve the bonds, assigning as a reason for his refusal that the transcript of the proceedings showed that the City Commission by its order for the election submitted the question as to the issuance of the bonds to the resident qualified voters of the city, when, under the Constitution, such question should have been submitted to and determined by only qualified electors who owned taxable property in the city and who had rendered the same for taxation. The court, after quoting Sections 3 and 3a of the Texas Constitution, upheld the Attorney General's refusal to approve the bonds in language which is crystal clear. The court said:

"These two sections in plain language prescribe property ownership as an essential qualification for those who vote in any election held in a city for the purpose of determining whether an expenditure of money shall be made by the city. The inclusive phrase, 'all elections to determine expenditure of money,' used in Section 3, is not restrained by any qualification or limited by any exception. The more explicit language of Section 3a makes it clear that the qualification prescribed is not intended to have application solely to elections held for the expenditure of money procured by taxation, or which may result in an increase of the tax burden.

"While it is true that revenue bonds issued under Articles 1111 and following, as held in City of Dayton v. Allred (Texas Com. App.) 68 S.W. 2d 172, do not create a debt within the meaning of Sections 5 and 7 of Article 11 of the Constitution, undoubtedly an election for the issuance of such bonds is held for the purpose of determining the expenditure of money. The

proposition to be voted upon is whether the city shall issue and sell revenue bonds and use the proceeds for the purpose of building, purchasing or improving waterworks, light plants, etc. One voting for the issuance of the bonds thereby necessarily approves the expenditure of the proceeds of the bonds."

It follows that had the City of Laredo presented to the Attorney General of Texas Urban Renewal revenue bonds for approval, and had the transcript reflected that the order of the election submitted the question as to the issuance of the bonds to the resident qualified voters of the city, the Attorney General would have been justified on that ground alone in refusing to approve the bonds. In the event such record had been presented to this court, there is no doubt but that the petition for writ of mandamus to compel the Attorney General to approve the bonds would have been denied just as in the Richmond case. The election in the City of Laredo authorized the issuance of bonds by a corporate body politic. The same thing is true as to the election involved in the City of Richmond case.

The case of Taxpayers' Association of Harris County v. City of Houston, 129 Texas 627, 105 S.W. 2d 655 (1937) ; Moreland v. City of San Antonio, Texas Civ. App., 116 S.W. 2d 823, er. ref. (1938), and King v. Carlton Independent School District, 156 Texas 365, 295 S.W. 2d 408 (1956), relied upon by the respondents, are easily distinguishable from the Richmond case as well as the case at bar.

In the Moreland case, the court held that the proposition submitted to the voters was no more than an amendment to the city charter granting to the city the power to advertise the city for the benefit of its citizens and was not to determine the expenditure of money or for the purpose of expending money, within the meaning of Sections 3 and 3a of Article 6 of the Constitution.

In the City of Houston case, the court distinguished the Richmond case and held that there is a vast difference between voting on revenue bonds, the proceeds of which are to be expended to purchase a municipal water plant, and the mere voting of an ordinance for fixing minimum wages,—the difference being that on the one hand the proposition submitted to the electorate involves the expenditure of money, whereas the fixing of salaries, et cetera, is a matter of policy.

In the King case, supra, this court was called upon for a

declaratory judgment construing Section 3 of Article 2784e, Vernon's Annotated Civil Statutes. Regardless of the language of the section, this court assumed that the question presented called for a construction of Section 3 by defining the qualifications of voters who may participate in an election to *adopt* the Act. The opinion was rendered on the basis of this assumption. The election, in other words, did not involve the expenditure of money. In fact, the question of the adoption of the Act was submitted separately from the submission of the question of the levy of taxes and issuance of bonds. The court held that so far as the adoption election was concerned the legislature was not authorized to prescribe any other standard for voters than that of qualified electors as defined by Article VI, Section 2, supra. Although the language "qualified voters of such district who own property which has been duly rendered for taxation on the tax rolls of the county for that purpose" was stricken from the Act, it is clear that such action was based on the holding that the legislature was not authorized to limit the voters at the "adoption of the Act" election to qualified property owners.

The judgment of the Court of Civil Appeals is reversed and the cause is remanded to that court for further consideration of the appeal involving the election contest.

Opinion delivered December 14, 1960.

MR. JUSTICE WALKER dissenting.

I would affirm the judgment of the Court of Civil Appeals for the reasons stated in its opinion, 337 S.W. 2d 134.

Opinion delivered December 14, 1960.