

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

July 30, 1963

Honorable James E. Barlow
Criminal District Attorney
Bexar County
San Antonio, Texas

Dear Sir:

Opinion No. C- 116

Re: Construction of Sec. 3, Art. IX of the Constitution relative to vote required for adoption of a county home rule charter.

In your letter requesting an opinion of this office, you state that Bexar County is in process of drafting a home rule charter to be submitted to the voters early in the fall, and you ask for an opinion on the number of votes which are required to adopt the charter. In substance, your question is whether the vote required is a majority of the qualified electors eligible to vote, or only a majority of those actually voting at the election. Directly involved is a construction of the following provision in Subsection (2) of Section 3, Article IX of the Texas Constitution:

". . .No County Home Rule Charter may be adopted by any county save upon a favoring vote of the resident qualified electors of the affected county. In elections submitting to the voters a proposal to adopt a Charter (unless otherwise provided by a two-thirds vote of the total membership of each House of the Legislature) the votes cast by the qualified electors residing within the limits of all the incorporated cities and towns of the county shall be separately kept but collectively counted and the votes of the qualified electors of the county who do not reside within the limits of any incorporated city or town likewise shall be separately kept and separately counted, and unless there be a favoring majority of the votes cast within and a favoring majority of the votes cast without such collective cities and towns, the Charter shall not be adopted."

Acting under the provision authorizing the Legislature to change the requirement for separation of the votes cast within and without the cities and towns, the Legislature in 1951 passed a statute (Article 1606b, V.C.S.) which provides as follows:

-576-

"Authority is hereby conferred upon Bexar County to adopt a 'Home Rule Charter' in accordance with the provisions of Section 3 of Article IX of the Constitution of Texas by a favoring vote of the resident qualified electors of said County, and it shall not be necessary for the votes cast by the qualified electors residing within the limits of all the incorporated cities and towns of the county to be separately kept not separately counted from those cast by qualified electors of the county who do not reside within the limits of any incorporated city or town, and a favoring majority of the votes of such electors cast in the county as a whole shall determine the result of such election."

In your brief you have reached the conclusion that the language of the constitutional provision requiring "a favoring vote of the resident qualified electors of the affected county" makes a majority vote of all qualified electors necessary for adoption of the charter. You have concluded, further, that Article 1606b is unconstitutional because it attempts to require only a majority of the votes cast at the election, and that the election in Bexar County will have to proceed under the provisions of Article 1606a, V.C.S. (the general enabling statute) and the votes in the cities will have to be kept and counted separately from the votes in the remainder of the county.

Section 15 of Article 1606a provides:

"If the election results in a constitutional majority of the votes cast in the election being for the charter, the same shall be declared to be adopted. . . . . ."

Section 15a of Article 1606a repeats the provisions of Section 3, Article IX quoted above, except for omission of the parenthetical language permitting the Legislature to change the requirement for a favoring vote both within and without the cities and towns. You have concluded that, in view of Section 15a, the "constitutional majority" required by Section 15 means a majority of the qualified electors of the county.

We are unable to agree with your construction of the quoted constitutional provision. The first sentence of the quotation, standing alone, is ambiguous, but when construed in conjunction with the succeeding sentence we think it is clear that "a favoring vote of the resident qualified electors of the affected county" means a majority of the votes cast at the election. The phrase "resident

qualified electors of the affected county" defines the persons eligible to vote, but does not define the basis on which the favorable vote shall be determined. The second sentence explains the vote required for adoption. It provides that (unless otherwise provided by Legislature) the charter shall not be adopted "unless there be a favoring majority of the votes cast within and and a favoring majority of the votes cast without such collective cities and towns." (Emphasis added.) In our opinion, the intended meaning of these provisions is that the converse shall also be true, i.e., that the charter shall be adopted if there is a favoring majority of the votes cast within and a favoring majority of the votes cast without the cities and towns. We do not find any warrant for reading into these provisions the further requirement that the combined majorities must be a majority of all qualified electors of the county.

The construction we place on the provision under consideration is supported by other provisions in Section 3 of Article IX. Paragraph e of Subsection (3) provides that "any county may, by a majority vote of the qualified electors of said county, amend its Charter to include other powers . . . . ." Subsection (7) provides that charters shall make appropriate provision for the abandonment, revocation, and amendment thereof, "subject only to the requirements that there must be a favoring majority of the vote cast upon such a proposal, by the qualified resident electors of the county. . . . . ." (Emphasis added.) In view of Subsection (7), it is clear that "majority vote of the qualified electors of said county" means a majority of those voting at the election. The similar language, "favoring vote of the resident qualified electors of the affected county," should be construed to have similar meaning. Walker v. Koger, 99 S.W.2d 1034 (Tex.Civ.App. 1937, error dism.); 39 Tex. Jur. 201, Statutes, Sec. 108.

Attorney General's Opinion No. C-54 (1963) involved the vote required for creation of hospital districts under Section 9, Article IX of the Constitution. One provision of the section states that a district shall not be created "unless approved by a majority of the qualified property taxpaying electors thereof voting at an election called for the purpose," whereas a subsequent provision states that no district shall be created except by act of the Legislature "and in no event may the Legislature provide for a district to be created without the affirmative vote of a majority of the taxpaying voters in the district concerned." In holding that the latter provision was not intended to require anything more than a majority vote of those voting at the election, the opinion alluded to the rule stated in 39 Tex.Jur. 162, Statutes, Sec. 91, to the effect that a statute should be given a reasonable and sensible construction, and

irrational conclusions or deductions should be avoided in the absence of compelling language found in the enactment.

This rule may aptly be applied to the present inquiry. Apart from the clarifying language following the provision, a very practical argument for concluding that the provision under consideration was not intended to require a majority vote of all qualified electors is that there is no means by which the canvassing authorities may accurately ascertain the number of qualified electors in the county. In 1933, when the County Home Rule Amendment was adopted, as at the present time, voters exempt from payment of the poll tax on the ground of overage and who do not live in a city of 10,000 or more inhabitants are not required to obtain an exemption certificate or to register in any manner. Also, at that time certain persons exempt on the ground of nonage or nonresidence were not required to obtain exemption certificates. Arts. 2968, 2969, R.C.S. of 1925. Moreover, the tax collector's list of qualified voters might not accurately reflect as of the day of the election the number of qualified voters in the county who were required to obtain poll tax receipts or exemption certificates, because of deaths and removals into and out of the county after the receipts and certificates were issued. A requirement for a majority vote of all qualified electors might leave the outcome of some elections unresolved or in doubt because of the inability to determine the number of qualified electors. It is unreasonable to believe that such a result was intended in the absence of compelling language.

In view of the lack of means for accurate ascertainment of the number of qualified electors in the county, the constitutionality of Article 1606b could be sustained on the authority of City of Fort Worth v. Davis, 57 Tex. 225 (1882), even if the constitutional provision itself should be construed to require a majority vote of all qualified electors residing in the county. In that case the court held that a constitutional provision authorizing the levy of a municipal tax "if two-thirds of the taxpayers of such city or town shall vote for such tax" required an affirmative vote of two-thirds of all the taxpayers in the town who were qualified voters, but the court upheld a statute implementing the constitutional provision which required an affirmative vote of two-thirds of the taxpayers voting at the election, on the ground that the constitution prescribed no means of ascertaining the number of taxpaying qualified voters in the city and it was competent for the Legislature to adopt the number of votes cast as the test for the number of taxpaying voters on the day of the election.

Since succeeding provisions in Section 3, Article IX clarify the meaning of "a favoring vote of the resident qualified electors of the affected county," it is unnecessary to dwell on what construction would be given the quoted language standing alone; but it might be

mentioned that the Texas courts have held that constitutional and statutory provisions requiring a majority vote of the qualified voters mean a majority of those actually voting at the election. Bradshaw v. Marmion, 188 S.W. 973 (1916); Marsden v. Troy, 189 S.W. 961 (Tex.Civ.App. 1916); Shaw v. Lindsley, 195 S.W. 338 (Tex. Civ.App. 1917); State ex rel. Wilkinson v. Self, 191 S.W.2d 756 (Tex.Civ.App. 1945); Eason v. Robertson, 288 S.W.2d 269 (Tex.Civ. App. 1956, error dism.). While the reasoning in some of the cases might allow for a distinction between the use of the phrase "quali- fied voters" and the phrase "qualified electors," the reason advanced in other cases is equally applicable to either term.

It is our opinion that Section 3, Article IX of the Consti- tution requires only a majority vote of the qualified electors voting at the election. We therefore are of the opinion that the provision in Article 1606b, V.C.S., requiring a favoring majority of the votes cast is not in conflict with the Constitution.

## S U M M A R Y

The vote required by Section 3, Article IX of the Texas Constitution for adoption of a county home rule charter is a majority of the qualified electors who actually vote at the election rather than a majority of all qualified electors eligible to vote.

Yours very truly,

WAGGONER CARR
Attorney General

By *Mary K. Wall*

Mary K. Wall
Assistant

MKW:jh:mkh

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
J. S. Bracewell
George Gray
Milton Richardson

APPROVED FOR THE ATTORNEY GENERAL
BY:  Stanton Stone