Tom MILLER, Mayor, et al., Appellants,

v.

Frank E. MONTGOMERY et al., Appellees.

No. 10841.

Court of Civil Appeals of Texas.

Austin.

May 10, 1961.

Rehearing Denied May 31, 1961.

Doren R. Eskew, City Atty., C. J. Taylor, Jr., Thomas R. Hunter, Asst. City Attys., Austin, for appellants.

Harry M. Whittington, Ras Redwine, Austin, for appellees.

HUGHES, Justice.

This suit was brought by Frank E. Montgomery, Mrs. L. B. Randerson, V. A. Stovall, Joe A. Barnes and William B. Gardner, Jr., against Honorable Tom Miller, Mayor of the City of Austin and other officials of Austin, in their official capacities, to contest an election held in the City of Austin December 5, 1959, for the purpose of determining whether or not the City Council of the City of Austin should adopt a resolution making certain findings, determinations and elections under and pursuant to the Texas Urban Renewal Law, Art. 1269*l*-3, Vernon's Ann.Civ.St.

The result of such election was, as officially found by the City Council of the City of Austin, that 3,421 votes were cast for and 3,369 votes against, the adoption of such resolution by the City Council, a majority of 52 votes for adoption of the resolution.

The grounds of the contest were:

"(1) that 228 votes were cast by voters who were unqualified because they did not own taxable property that had been duly rendered for taxation; (2) that 4 votes were cast by voters who were unqualified because they had not paid a poll tax, or failed to obtain an exemption certificate; (3) that if such disqualified voters had not been permitted to vote the result of the election would have been different; (4) that the official canvass was con-

ducted in disregard of the laws of Texas resulting in irregularities and discrepancies which rendered the true result improbable or impossible of ascertainment; and (5) that the city council failed to furnish the election judges with a certified list of qualified voters thereby permitting unqualified voters to participate in the election."

Contestants prayed that the election be declared void, or in the alternative that the true result of the election be ascertained by a recount of the legally cast ballots.

Contestants called as witnesses and examined 155 persons who were listed as having voted at the election in order to determine whether or not they owned taxable property within the city and had rendered it for taxation as required by Secs. 5 and 9 of the Urban Renewal Law, defining electors qualified to vote in the election.[1]

When contestants rested their case they moved the court to examine the contents of ballot and stub boxes for 18 specific voting precincts and to determine "Whether the following persons voted for or against the proposition on the ballot", and that the contents of such boxes be also examined for other stated purposes.

Numerous persons were named in this motion, a number more than sufficient to have possibly affected the result of the election.

This motion was not immediately ruled on by the court, but was taken under advisement for later disposition.

Appellees filed a motion after all parties had rested for an order declaring the election void.

Prior to ruling on this motion, the court granted appellees' motion to open certain boxes, reading a list containing 101 names.

The court thereupon instructed the clerk of the court as follows:

"Mr. Clerk, you will be requested, or ordered, rather, under the direction of the Court, to open the boxes whose names, or sufficient of the boxes until the Court tells you to quit, sufficient of the boxes, and find the stub and then the vote for the person whose name will appear on this list and under the box, and in the presence of the Court, if Counsel desires it, and of Counsel, tally the vote as to how it was cast. I am not going to order all of the boxes opened now, but I would suggest we start with the one that has the most, the largest number in them, and then the next largest number of those that the Court had declared to retally, and tally them with Counsel as to whether they voted for or whether they voted against, and the name, and I hope that we can get started on it by 10:00 o'clock in the morning. The main part about it, sir, the worst part about it will be hunting through there in the larger boxes for that specific vote, after you have found the stub that fits it. Now, at that time also, Gentlemen, the Court will rule tomorrow morning on whether or not it would serve any purpose for the Court to get again in your presence and to have the Clerk to open the boxes No. 4 in all boxes wherein there is a differentiation in the actual tally. I don't know whether that will help the Court or not, but I will try to make up my mind between now and in the morning in that regard.

"Gentlemen, if you will make a list of these with spaces left to where we can add others, possibly, on each box, it will expedite the thing tremendously between now and morning, in that as they are counted, I mean, as that list is gone down, those that may be strick-

---

[1]. See Martin v. Richter, 342 S.W.2d 1, Texas Supreme Court, sustaining validity of these sections.

en by the Court could be stricken from that, and the Clerk could then tally them as he counts them on each of your tallies, and. in other words, if one of you would make your list of these, together with five or six copies, well, it would expedite the thing tremendously, and show what box, of course, they are in, dividing them up by boxes."

The court also observed:

"I am carrying your Motion along asking that this election be thrown out and declared void. If the Court finds, candidly, that, when I get down into this thing, that I get hopeless—in other words, that I can't ascertain any true count, then the Court will consider it his duty to go ahead and declare that.

    \*     \*     \*  .    \*     \*     \*

"Candidly, the Court hates at all times to go into a ballot box, but there are times, such as this, when the only time that true justice can be done, that it makes it mandatory and necessary for both sides that we go in and see, but insofar as being a public thing and the counting of the ballots will not be public, of course."

Nothing further of consequence transpired in the case, at least which is reflected by the record, until on June 21, 1960, when the court rendered judgment declaring the election "void", and in which the court "found from the evidence that it is impossible to ascertain the true result of the election."

There is no evidence in the record to support this finding. Appellees, in their brief, frankly stated:

"The record before this court does not include what the Court found when the ballot boxes were opened although the facts found by the Trial Court during the examination of the ballots was recorded by the official court reporter."

Appellees' basic contention is reflected by the following quotation from their brief:

"The judgment stands before this Court supported by all the implied findings and presumptions of fact that can be drawn from the evidence seen and heard by the judge. That part of the record containing the evidence primarily on which the judge acted is not brought forward by the appellants and they wholly failed to exercise their right to have the Court make specific findings of fact.

"In the absence of the record and in the absence of any request for specific findings it must be presumed that the Court discovered conditions in the ballot boxes that made it impossible for him to determine how the 103 disqualified voters voted (which would have made it impossible to ascertain the true results of the voting) or he found a combination of irregularities such as unsigned stubs, mutilated or illegible ballots, and the like which convinced him that further exploration of the ballot boxes would not change the situation.

"The applicable rule of law is:

" 'It is an elementary rule that in the absence of facts to the contrary an appellate court will assume that the trial court had before it and passed upon all the facts necessary to authorize it to render judgment in the manner and form as. rendered.'

" 'To hold otherwise would be to strike down a judgment by presumption. While a judgment in the absence of the evidence upon which it was rendered, will be sustained by presumption, it will never be rendered invalid by presumption.'

"Mutual Investment Corporation v. Hays, 59 S.W.(2d) 97 (Com.App. 1933)."

Other cases cited by appellees to sustain this point are Schweizer v. Adcock, 145 Tex. 64, 194 S.W.2d 549, Hill v. Leschber, Tex.Civ.App., Austin, 235 S.W.2d 236,

Mueller v. Banks, Tex.Civ.App., San Antonio, 317 S.W.2d 812, writ ref., N.R.E., and Locke v. J. H. Marks Trucking Co., Tex.Civ.App., El Paso, 318 S.W.2d 1, 2.

In the case quoted by appellees and in all the cases cited by appellees, except Locke v. J. H. Marks Trucking Co., there was no statement of facts before the appellant court.

In Locke v. J. H. Marks Trucking Co., the court stated:

"Where the statement of facts brought up on appeal is abbreviated or partial in its comprehension, we must assume that the excluded portion is favorable to, and supports the judgment of, the trial court."

This case is distinguishable from our case as we shall now demonstrate. The statement of facts filed before us contains the following certificates:

"Reporter's Certificate

The State of Texas ⎫
County of Travis ⎭

"I, Harry L. Wear, Court Reporter, 126th Judicial District Court of Travis County, Texas, do hereby certify that the above and foregoing 875 pages, together with the original exhibits which accompany this record, constitute a full, true and correct transcript (in Question and Answer form) of the evidence admitted in the trial of said Cause No. 116,495, styled Frank Montgomery, et al –vs– Tom Miller, et al, in said 126th Judicial District Court of Travis County, Texas, together with all objections as to the admission or exclusion of evidence, the rulings of the Court thereon and the exceptions reserved thereto.

"Witness My Hand this the 18th day of August, A.D. 1960.
"S/ Harry L. Wear
"Harry L. Wear, Court Reporter,
"126th Judicial District Court of Travis County, Texas."

"We Hereby Agree that the above and foregoing 875 pages, together with the original exhibits which accompany this record, constitute a full, true and correct statement of all the evidence (in Question and Answer form) admitted in evidence by the Court upon the trial of the said Cause No. 116,495, styled Frank Montgomery, et al –vs– Tom Miller, et al, in the 126th Judicial District Court of Travis County, Texas.

"We Further Agree that said Statement of Facts contains all objections to the admission or exclusion of evidence, the rulings of the Court thereon and the exceptions reserved thereto.

"And We Further Agree that this record shall be filed as the Statement of Facts and Bills of Exception (except such other and further Bills as may be filed) in this cause.

"Dated this 19th day of August, A.D. 1960.

"Harry M. Whittington
"S/ Ras Redwine
"Ras Redwine
   "Counsel for Plaintiffs

"Doren Eskew, City Attorney of Austin, Texas
"S/ C. J. Taylor, Jr.
"C. J. Taylor, Assistant City Attorney of Austin, Texas

   "Counsel for Defendants"

These certificates have not been repudiated, nor has any party sought to bring up additional evidence heard on the trial.

The contention of appellees is so startling, unconventional and inconsistent with the principles upon which our judicial system is founded as to almost defy legal analysis.

Trial and appellate courts are constantly wrestling with evidentiary matters. The triers of fact weigh and settle fact issues.

The courts weigh and determine the legal or factual sufficiency of evidence. These problems all contemplate, at least up to now, the consideration of testimony of witnesses and other evidence produced in accordance with rules of law in open court and subject to critical examination by the courts and all interested parties.[2] In lieu of this procedure we are asked to presume that the trial judge, on his own, discovered facts which invalidate this election, albeit such facts are withheld from the inspection of the parties, the courts and the public. We cannot be too emphatic in stating that trials cannot be so conducted or judgment so sustained. See 3 Tex.Jur.2d p. 647.

Appellees alleged a number of irregularities in the conduct of the election which appellees do not urge, as we understand them, to be sufficient to sustain the trial court in holding the election void. They say:

"Appellees agree with Appellants, and the authorities which they have cited, to the effect that a mere irregularity will not vitiate an entire election. Any one of the above instances of irregularity or misconduct which appear in the record would not have been grounds for the Trial Court's judgment. When considered together, however, serious doubt is cast upon the officially declared result."

Art. 9.15 [3] of the Texas Election Code, V.A.T.S., provides:

"If it appears on the trial of any contest provided for in Section 134 [art. 9.06] that it is impossible to ascertain the true result of the election as to the office about which the contest is made, either from the returns of the election or from any evidence within reach or from the returns considered in connection with other evidence, or should it

appear from the evidence that such a number of legal voters were, by the officers or managers of the election, denied the privilege of voting as, had they been allowed to vote, would have materially changed the result, the court shall adjudge such election void, and direct the proper officers to order another election to fill said office; which election shall be ordered and held and returns thereof made in all respects as required by the general election laws of the State. Acts 1951, 52nd Leg., p. 1097, Ch. 492, art. 143."

None of the instances contained in this statute for declaring an election void is present in this case, and the Trial Court erred in declaring the election void without the evidence required by this statute, or without incorporating such evidence in the record in the usual manner.

Since this case is to be reversed and remanded, we quote the following well settled rules of law taken from Marks v. Jackson, Tex.Civ.App., Galveston, 130 S.W.2d 925, 927, writ dism. under which this case should be tried:

"In an election-contest, the burden is on the contestants to allege and prove either that a different result should have been reached by counting or not counting certain specified votes; or that the irregularities in the conduct of it were such as to render it impossible to determine the true will of the majority of the voters participating in the election; and irregularities in the conduct of the election, which cannot be demonstrated to have materially affected the result, are immaterial."

The judgment of the Trial Court is reversed and this cause is remanded.

Reversed and remanded.

---

2. Lawyers will understand that facts judicially and commonly known are not embraced in this discussion.

3. This article is made applicable to other contested elections by Art. 9.30, Texas Election Code, V.A.T.S.